## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CT-00518-SCT

*BRIAN CLAYTON HICKSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/93 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| | SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | BOYCE J. HOLLEMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWERY |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/19/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/10/97 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

ON PETITION FOR WRIT OF CERTIORARI

Introduction

¶1. This matter comes before the Court, en banc, after granting petitioner's application for writ of certiorari. Brian C. Hickson was convicted of sexual battery following a jury trial on March 22 and March 23, 1993, in the Second Judicial District of the Circuit Court of Jones County, Mississippi. He was subsequently sentenced to serve thirty years in the custody of MDOC. Upon appeal, the Court of Appeals affirmed the trial court decision on October 1, 1996, and denied the petition for rehearing on

January 4, 1997. The petition for writ of certiorari was filed with this Court on January 24, 1997, and granted on March 13, 1997.

¶2. The following issues were raised for certiorari review:

> A. THE COURT OF APPEALS WAS INCORRECT IN AFFIRMING THE TRIAL COURT'S DENIAL OF HICKSON'S MOTION FOR A NEW TRIAL IN LIGHT OF THE STATE'S FAILURE TO TIMELY DISCLOSE TWO WITNESSES' IDENTIFICATION OF HICKSON AS THE ALLEGED PERPETRATOR OF THE SEXUAL BATTERY IN QUESTION; B. THE COURT OF APPEALS INCORRECTLY HOLDS THAT THE DEFENDANT DID NOT PROPERLY PRESERVE THE ERROR IN THE TRIAL COURT IN DENYING DEFENDANT'S MOTION IN LIMINE AS TO THE PRIOR CONVICTION AND THE CHILLING EFFECT ON HIS RIGHT TO TESTIFY; C. THE COURT OF APPEALS WAS INCORRECT IN HOLDING THE STATE WAS ALLOWED TO QUESTION HICKSON'S WIFE CONCERNING HER SILENCE AFTER HER HUSBAND'S ARREST; D. THE COURT OF APPEALS WAS INCORRECT IN HOLDING THE STATE WAS ALLOWED TO QUESTION HICKSON'S WIFE CONCERNING HER REFUSAL TO SPEAK TO REPRESENTATIVES OF THE PROSECUTION.

### Facts

¶3. A brief overview of the facts will be given, as they are not particularly relevant to the petition for writ of certiorari.

¶4. On Sunday, January 28, 1990, Tara Bush was working at Vance Video Rental. At the close of the work day, a man entered the store, held a gun to Tara's head, and forced her into the back room. Tara's mother, Martha Dow, was in the restroom adjacent to the back room. Hickson opened the door to the restroom, displayed his gun, and told Martha Dow that if she came out he would shoot her and her daughter. Hickson then fondled Tara Bush, taped her eyes shut, and placed his fingers in her vagina. Martha Dow told Hickson through the closed door that Tara's father would arrive soon. Hickson departed.

### Issues raised for certiorari review

**A. THE COURT OF APPEALS WAS INCORRECT IN AFFIRMING THE TRIAL COURT'S DENIAL OF HICKSON'S MOTION FOR A NEW TRIAL IN LIGHT OF THE STATE'S FAILURE TO TIMELY DISCLOSE TWO WITNESSES' IDENTIFICATION OF HICKSON AS THE ALLEGED PERPETRATOR OF THE SEXUAL BATTERY IN QUESTION.**

**B. THE COURT OF APPEALS INCORRECTLY HOLDS THAT THE DEFENDANT DID NOT PROPERLY PRESERVE THE ERROR IN THE TRIAL COURT IN DENYING DEFENDANT'S MOTION IN LIMINE AS TO THE PRIOR CONVICTION AND THE CHILLING EFFECT ON HIS RIGHT TO TESTIFY.**

**C. THE COURT OF APPEALS WAS INCORRECT IN HOLDING THE STATE WAS ALLOWED TO QUESTION HICKSON'S WIFE CONCERNING HER SILENCE AFTER**

HER HUSBAND'S ARREST.

**D. THE COURT OF APPEALS WAS INCORRECT IN HOLDING THE STATE WAS ALLOWED TO QUESTION HICKSON'S WIFE CONCERNING HER REFUSAL TO SPEAK TO REPRESENTATIVES OF THE PROSECUTION.**

### A.

¶5. Hickson asserts that he is entitled to a new trial because the State failed to timely disclose Tara and her mother's identifications of Hickson as the perpetrator of the sexual battery, in violation of Uniform Criminal Rule of Circuit Court Practice 4.06.[1]

¶6. After Hickson was charged with the offense of sexual battery, he was provided discovery pursuant to a request under Rule 4.06 of the Uniform Criminal Rules. That discovery contained a photo line-up report concerning statements of Tara Bush and Martha Dow being unable to identify Hickson as the assailant. The report, dated January 8, 1992, states:

> On 27 October 91, [Police Chief] Bush met with Tara Bush at her residence and allowed the victim to view the mentioned photo-spread. The victim pointed to a photo of Hickson as who she thought the assailant to be; however, *the victim stated that she didn't think that she could swear to this identification in a court of law.*

¶7. Concerning Mrs. Dow's statement the report states:

> On 28 October 91, [Police Chief] Bush met with the victim's mother, Martha Dow (a witness in this case) at Dow's residence. Dow viewed the same photo-spread *and could not make an identification.* Dow picked Hickson's photo, but stated that, "it looks like this guy, but I just can't be sure.

¶8. However, at trial, Martha Dow testified that "I told him [Chief Bush] that I was 99 percent sure that it was him." Tara Bush, when asked by the State if she was 100 percent sure it was him, replied in the affirmative stating, "I knew it was him but I just wanted to be sure, *I wanted to see him.*" [2]

¶9. These new positive identifications by the two witnesses that Hickson was Tara's assailant, which the State knew existed prior to trial, were never provided to defense counsel. Upon discovery of the Rule 4.06 violation, defense counsel moved for a mistrial which was denied. The Court of Appeals affirmed the trial court's denial of a mistrial. Rule 4.06 reads as follows:

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
>
> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
>
> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall . . . exclude the evidence or grant a continuance . . . for the defense to meet the non-disclosed evidence *or grant a mistrial.*

¶10. The Court of Appeals opined that no discovery violation had occurred because the "trial court ruled that Hickson's original counsel [the same counsel had represented Hickson throughout the proceedings in question--there was no change of counsel] had been informed of the positive identifications" and that "the trial court ruled the positive identifications had appeared in the local press."

¶11. The Court of Appeals appears to have incorrectly stated the case. The State failed to state on the record that it had properly supplemented discovery regarding the subsequent change in the eyewitnesses identifications, and the trial court did not rule "that Hickson's original counsel had been informed of the positive identifications" or that "the positive identifications had appeared in the local press." The trial court actually stated:

> THE COURT: I *think* Mr. Holleman was properly advised that was the situation. I don't know if you were ever aware or not, but at such time as Mr. Holleman was in the case, he was fully aware that there was an identification made --out *was my understanding.*

> THE COURT: I would hate to have to refer to a newspaper or television account, but *I think* it was even published in the newspaper and on television that the Defendant had made an identification--[sic]

> MR. BUCKLEY: Do you mean the victim?

> THE COURT: --the victim had made an identification of the defendant.

¶12. It appears that the Court of Appeals based its decision on what the trial court "thought" happened, or its "understanding" or belief that it appeared in the news, not what actually happened. This does not meet the requirement of the rule that discovery be supplemented, nor does the above meet the substantial evidence required under *Moore v. State*, 587 So. 2d 1193 (Miss. 1991) and *Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

¶13. Hickson argues that "Rule 9.04 provides for several remedies if it is violated, one of which is a mistrial. In this case, because of the sand bagging by the prosecution in failing to provide supplemental discovery, the surprise to the defense came on cross-examination of the eyewitnesses, Bush and Dow, and it was too late to do anything other than grant a mistrial." Hickson cites *Galloway v. State,* 604 So. 2d 735 (Miss. 1992) and *Mack v. State*, 650 So. 2d 1289 (Miss. 1994) in support of his argument. In *Mack* this Court held:

> . . . . In addition to the initial disclosure, the prosecutor had a continuing duty to supplement.

> As such, it is clear that the prosecutor violated Rule 4.06 because he was aware of Dawkins' statement, especially when the prosecutor knew that he would call Dawkins to corroborate Reynold's testimony about the threat.

*Id.* at 1315.

¶14. In *Galloway v. State*, 604 So. 2d 735 (Miss. 1992), in reversing and remanding on a Rule 4.06(i)(1) violation, this Court held:

. . . The prosecution had a continuing duty to make discovery of "additional material or information which is subject to disclosure" which a party becomes aware of "subsequent to compliance with these rules or orders pursuant thereto." *See* Rule 4.06(e). We have consistently enforced this continuing duty to make discovery. *See Stewart v. State,* 512 So. 2d 889, 891-2 (Miss. 1987); *Foster v. State*, 484 So. 2d 1009, 1011 (Miss. 1986); *Acevedo v. State*, 467 So. 2d 220, 224 (Miss. 1985).

*Id.* at 740.

¶15. This Court went on to hold:

Our answer today is easy. Presley's testimony quite simply gutted the defense theory of the case. It was error that Galloway was not given fair advance notice thereof, nor reasonable opportunity to meet it. This error was anything but harmless. . . . We reverse and remand for a new trial on all issues.

*Id.*

¶16. The failure by the State to supplement discovery pursuant to Rule 6.04 is reversible error, as the defense appears to have been "ambushed" by the prosecution's failure to supplement discovery as required by the rules. On direct examination, the defense appeared puzzled as to Tara Bush's positive identification of Hickson as her assailant. On cross-examination, the defense elicited testimony establishing that the State had subpoenaed Tara and her mother to attend the trial of the State's stronger case against Hickson.[(3)] The same two prosecutors tried the case and the same judge presided at the earlier trial attended by Tara Bush and her mother. Counsel for defense also elicited the fact that Chief Bush had paid several visits to Tara and her mother with photographs following the trial. Counsel's understanding prior to trial was that Chief Bush had met with Tara and her mother ; the Chief had written the investigatory reports which were given to the defense pursuant to their discovery request; and the identification of Hickson by Tara and her mother was still uncertain. The State's subpoena of Tara Bush and her mother to attend another trial of Brian Hickson on a sexual battery charge, after they stated they were unsure of his identity, led to improper bolstering and suggestive identification, violating a the defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188 at 198 (1972).

¶17. We reverse and remand for a new trial on this issue.

## B.

**The Court of Appeals incorrectly holds that the defendant did not properly preserve the error in the trial court in denying the defendant's motion in limine as to the prior conviction and the chilling effect on his right to testify.**

¶18. A motion was made to limit the State in cross-examining the defendant about his prior conviction on the charge of sexual battery. The court opined that the State had a right to cross-examine regarding the previous conviction. The State stated it was not their intention to bring the matter up, but wanted to "reserve that at such time as we decide . . . " The court reserved ruling, noting that the State might want to "use it for impeachment purposes."

THE COURT: I understand it puts you in a grave situation when you put your defendant on the stand, but yet they have a right under the Supreme Court cases to do it."

¶19. The court then "overruled all motions."

¶20. Later, outside the presence of the jury, the defense renewed its earlier motion to prevent the State from cross-examining Hickson on the prior conviction for sexual assault. The State pointed out that prior convictions of the defendant can be introduced into evidence if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect, citing *Peterson v. State*, 518 So. 2d 632. The State argued that the probative value would be that showing the similarity between the past and the presently charged offense would show the *modus operandi*. [(4)]

¶21. The court ruled, "I am going to rule if they want to, they have a right to use it." There was no finding on the record that the probative value outweighed the prejudicial effect of allowing the prior conviction into evidence. After the court held that the State would be allowed to use the conviction if it wanted to, without performing the required on the record determination as to its probative value versus prejudicial effect, Hickson opted not to testify.

¶22. This Court has repeatedly stated that the trial court must make an on the record determination that the probative value of admitting the evidence outweighs its prejudicial effect on the party. In *Jordan v. State*, 592 So. 2d 522 (Miss. 1992) (Sullivan), this Court held:

> The trial judge must make an on the record determination that the probative value of the evidence outweighs its prejudicial effect and he should articulate his reasons for this finding. *Signer*, 536 So. 2d at 12, citing *Johnson v. State*, 525 So. 2d at 812. Where this evidence is manifestly prejudicial to the defendant and the trial judge fails to make such a determination on the record, *the case must be reversed and remanded for a new trial*. *Signer*, 536 So. 2d at 13, citing *Ivy v. State*, 522 So. 2d 740, 744 (Miss. 1988); *Peterson v. State*, 518 So. 2d at 638. *See Johnson*, 525 So. 2d 809 and *McInnis v. State*, 527 So. 2d 84 (Miss. 1988).

*Id.* at 523(emphasis added).

¶23. This Court has reached the same conclusion in *Hopkins v. State*, 639 So. 2d 1247, 1252 (Miss. 1993)([A]n on-the-record determination that the probative value of the prior conviction outweighs the prejudicial effects must be made in order to properly admit evidence of the conviction. M.R.E. 609(a)(1), Comment; *See also Johnson v. Fargo*, 604 So. 2d 306, 310 (Miss. 1992), in which we held:

> Procedurally, the balancing requirements of 609(a)(1) require a court to make an on-the-record finding of admissibility. *Johnson v. State,* 529 So. 2d 577, 587 (Miss. 1988); *Peterson*, 518 So. 2d at 638. Our case law requires the trial judge to make an on-the-record ruling on admissibility prior to admission of evidence from the witness of a prior conviction. *McInnes*, 527 So. 2d at 87; *Peterson*, 518 So. 2d at 636.[(5)]

¶24. In *McGee v. State*, 569 So. 2d 1191, 1195 (Miss. 1990), this Court held:

> The mandate of our cases is that the prosecution has a threshold burden of probative value. *Signer v. State*, 536 So. 2d 10, 13 (Miss. 1988); *McInnis v. State*, 527 So. 2d 84, 88 (Miss.

1988); *Johnson v. State*, 525 So. 2d 809, 812 (Miss. 1988). . . .

> If this threshold be cleared, our cases require that a trial judge confronted with a Rule 609(a) ruling, *perform an on-the-record weighing of the probative value of the conviction against the prejudicial effect. Peterson v. State*, 518 So. 2d 632, 663-37 (Miss. 1987).

(emphasis added) *See also, Ivy v. State*, 522 So. 2d 740, 744 (Miss. 1988).

¶25. No on-the-record determination was made by the trial judge in the case *sub judice* that the probative value of admitting the prior conviction outweighed the prejudicial effect. The judge's ruling that evidence of the prior conviction could be admitted had a chilling effect on Hickson's testifying, and he did not testify. This omission by the trial judge constitutes reversible error. The Court of Appeals erroneously held that Hickson had not properly preserved the issue for appeal in the trial because he did not offer a proffer of his testimony, citing *Saucier v. State*, 562 So. 2d 1238 (1990) and *Heidleburg v. State*, 584 So. 2d 393 (Miss. 1991) in holding that Hickson's error is barred from consideration because he failed to make a proffer of his testimony.

¶26. In the case *sub judice*, Hickson entered a plea of not guilty to the offense. He presented three alibi witnesses that he was in Memphis, Tennessee, at the time of the alleged acts. As counsel points out, common sense and logic tell you that Hickson's testimony would mirror that of his alibi witnesses.

> Hickson's testimony was obviously critical to his defense, both as to his alibi defense and because he was the only witness that could address issues surrounding the purported fingerprint from a public video store introduced by the State. An on the record proffer would not have added one iota to the record already before the Court.

Pet. For Cert. at 8-9. Counsel would appear to be correct, and this factor distinguishes this case from *Saucier.* Additionally, pursuant to the many cases cited above, because the judge did not make an on the record analysis of the *Peterson* factors, or any analysis at all concerning his denial of Hickson's motion in limine, this error requires that the case be reversed and remanded for a new trial.

¶27. *Jordan, supra,* decided a week and a half after *Saucier* is directly on point regarding use of a prior conviction and the necessity of an on the record determination of probative versus prejudicial value for or against allowing use of the prior conviction. In *Jordan*, the defendant filed a motion in limine upon hearing of the State's intention to use a prior conviction which was denied. We reversed and remanded for a new trial finding that the denial of the motion in limine was reversible error. The trial court in *Jordan* found the conviction to be more probative than prejudicial, but did so without an on the record determination. We held that a trial judge must articulate his reasons for his ruling and when the evidence is manifestly prejudicial to the defendant and the trial judge fails to make such a determination on the record, the case must be reversed and remanded for a new trial. *Jordan,* 592 So. 2d at 523. *See also Peterson v. State*, 518 So. 2d 632, 636 (Miss. 1987).

¶28. A proffer would not have added to the record in this instance, as it is clear what Hickson's testimony would have been, and, the judge made no on record balancing test. Hickson did not testify. The Court of Appeals ignores the long line of cases by this Court holding that an on-the-record balancing test must be performed by the trial judge

**C.**

**The COA was incorrect in holding the State was allowed to question Hickson's wife concerning her silence after her husband's arrest.**

**D.**

**The COA was incorrect in holding the State was allowed to question Hickson's wife concerning her refusal to speak to representatives of the prosecution.**

¶29. Hickson claims that the State improperly impeached his wife, who was called to establish Hickson's alibi defense, by questioning her about her silence concerning the alibi prior to being listed as a witness for Hickson.

¶30. The State argued that the fact that Mrs. Hickson was contacted by the district attorney's office and refused to talk to anybody "goes to her *credibility* . . . . I think that it directly bears on her credibility as a witness--her truthfulness. " [(6)]

CROSS EXAMINATION BY THE STATE:

> Q. Mrs. Hickson, the attorney for your husband, Mr. Buckley, gave us notice on Friday that you were a possible witness in this case. Do you recall the investigator calling you on Friday?
>
> A. That's right.
>
> Q. That makes you an alibi witness; does it not?
>
> A. I suppose.
>
> Q. Now, I suppose you told law enforcement about this, did you not?
>
> A. No. Nobody has asked me.
>
> Q. You did not call and tell anyone that your husband was with you on the date he is charged with committing the crime?
>
> A. That's right. [(7)]

¶31. This "impeachment" was the only cross-examination of this witness by the State.

¶32. The Court of Appeals held that :

> The Statute [Miss. Code Ann. § 13-1-5 (1972)] and relevant case law recognize a waiver of spousal incompetency where both spouses consent to waive the privilege. *Jordan v. State*, 513 So. 2d 574, 581 (Miss. 1987) . . . . The Hicksons' waiver was effective when, on the day before trial, Ms. Hickson's name was submitted to the State on Hickson's witness list . . . .Further, once the Hicksons waived spousal incompetency, and Ms. Hickson delivered her testimony in support of her husband's alibi, the Hicksons could not claim spousal incompetency on cross-examination. COA op. at 5.

¶33. The COA is correct that pursuant to *Jordan v. State*, 513 So. 2d 574 (1987), spousal *privilege* is waived when a spouse agrees to testify at trial. The Spousal Competency Statute, Miss. Code Ann. § 13-1-5 states in pertinent part:

> But in all other instances where either of them is a party litigant, the other shall not be competent as a witness and *shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.*

¶34. However, spousal privilege or competency is not the issue before us. The issue is **whether when a witness refuses to speak to counsel opposite, his/her refusal is admissible to show the witness's lack of veracity pursuant to Rule 611(b).**

¶35. The general rule enunciated by this Court is that when a witness refuses to speak to counsel opposite, his refusal is not admissible to show the witness's lack of veracity. This Court held in *Alexander v. State*, 610 So. 2d 320 (Miss. 1992) (Pittman):

> Refusal to talk to an attorney prior to trial is not indicative of lack of veracity. *Sayles*, 552 So. 2d at 1386-87. Such refusal is permissible, and the witness *does not have to explain her silence.* We do note that the questioning of a witness' refusal to cooperate with the defendant's attorney may be permissible under Rule 616 to show bias but such is not the controlling rule in this instance . . . . The questioning of Wheeler was not relevant to his credibility.

*Id.* at 329.

¶36. The State clearly argued to the lower court that they wished to cross-examine Ms. Hickson concerning her silence to impugn her veracity and credibility; and the lower court overruled Hickson's objection to this cross-examination based upon the State's argument. Pursuant to *Alexander* and *Sayles*, this ruling was erroneous. In *Sayles v. State*, 552 So. 2d 1383, 1386-87 (Miss. 1989) (Sullivan), we held:

> Lastly, Sayles tried to impeach Elbert by showing a lack of veracity because he refused to discuss the matter with defense counsel prior to trial. . . . The trial judge was correct in excluding this evidence as irrelevant. Elbert's refusal to talk to an attorney prior to trial is not indicative of lack of veracity. The criteria of relevancy to shed light on the credibility of the witness and his direct testimony is vague. However, *Elbert's refusal to speak with defense counsel is not relevant to credibility.*

¶37. The trial court's ruling allowing the State to question Ms. Hickson on her silence was erroneous, and the Court of Appeals' analysis of this issue was also erroneous.

## Conclusion

¶38. The failure of the State to supplement discovery pursuant to Rule 9.04(1) of the Uniform Rules for Circuit and County Court resulted in reversible error pursuant to our case law in the factual and legal situation presented to us. Discovery reports given to the defense indicated that the witnesses could not make an in court identification of the assailant. Yet, at trial, these same witnesses made a positive identification, which the State clearly knew about, but failed to inform counsel for the defense of the changed status of the identifications. Pursuant to *Galloway* and *Mack*, *supra*, failure of

the trial court to grant a mistrial due to the State's failure to supplement discovery constitutes reversible error.

¶39. Additionally, the court ruled it would allow the State to use Hickson's prior conviction for sexual battery in the present trial, without making an on the record balancing of the probative versus prejudicial value of said conviction, as mandated by our case law. Once again, pursuant to published decisions of this court, this constitutes reversible error.

¶40. Finally, the trial court allowed the State to cross-examine Hickson's wife about her failure to come forward with the alibi defense prior to her inclusion on the witness list, and additionally to cross-examine her about her "failure to cooperate" with the prosecution and answer their questions. The basis of the court's decision to allow such cross-examination over the objections of the defense was that Ms. Hickson's actions demonstrated her "truth or veracity." Pursuant to published decisions of this Court, a witness need not cooperate with counsel opposite, and his/her silence cannot be used against him/her in court.

¶41. For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for a new trial.

¶42. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. SMITH AND MILLS, JJ., NOT PARTICIPATING.**

1. Rule 4.06 is now contained in Rule 9.04(I) of the Uniform Rules for Circuit and County Court, effective May 1, 1995.

2. Upon cross-examination, Tara Bush testified that she had seen Hickson on television and "at a different--at another case here." Under subpoena from the State, Tara had attended the earlier trial of Brian Hickson on a similar charge of sexual battery, a trial which involved the same two prosecutors and the same trial judge. The defense questioned: "Can there be a more suggestive encouragement of a witness to make a positive identification?"

3. Hickson was indicted and tried on two separate sexual battery charges. The alleged assault of Tara Bush occurred first in time, but was tried subsequently to the previous sexual battery charge. Tara's identification of Hickson was uncertain following the alleged assault.

4. We should note that the events in this case actually took place before the events in the previously tried case. The State went to trial with its strongest case first. A petition for writ of certiorari has been granted in that case, also. The uncertain identification of Hickson by Tara Bush and her mother apparently presented a problem to the State. Therefore, they tried the stronger case first, and subpoenaed Tara and her mother to attend that trial, also for sexual battery, with the same judge and same two prosecutors as in Tara's case. After that trial, Tara and her mother made a definite identification of Hickson which the State failed to disclose to the defense, allowing them to believe

the investigative reports detailing the uncertain descriptions represented the current status of Tara's and Mrs. Dow's proposed testimony.

5. In *Peterson v. State*, 518 So. 2d 632, 636-37 (Miss. 1987)(citing *Gordan v. United States*, 383 F. 2d 936, 940 (D.C. Cir. 1967), this Court addressed the five factors that a trial judge should consider when weighing the probative value of the prior conviction against the prejudicial effect of its admission: (1) The impeachment value of the prior crime; (2) The point in time of the conviction and the witness' subsequent history; (3) The similarity between the past crime and the defendant's testimony; (4) The importance of the defendant's testimony; (5) The centrality of the credibility issue. 3 J. Weinstein, *Evidence,* par. 609 [04] at page 609-88-89 (1987). *See also, United States v. Malone*, 537 F. 2d 922, 929 (7th Cir. 1976), *cert denied*, 429 U.S. 1025 (1976). Putting the balancing test into the record allows the appellate court to review whether or not the trial judge abused his discretion by allowing the prior conviction into evidence.

6. Had the State argued that such refusal to cooperate demonstrated *bias* rather than *veracity*, a different analysis would be appropriate. In *Lacy v. State*, 629 So. 2d 591 (Miss. 1993), this Court recognized that MRE 616 specifically provides for showing bias on the part of a witness through cross-examination relating to the witness's failure to cooperate with counsel opposite. However, the record shows that the State argued to the lower court that it wished to cross-examine Regina Hickson concerning her silence to impugn her veracity and credibility, and the lower court overruled Hickson's objection to the cross-examination on the basis of veracity or credibility. The State did not utter the word bias or cite MRE 616 in argument to the lower court or in the appellate briefs.

7. In *Powell v. State*, 662 So. 2d 1095 (Miss. 1995), we addressed the issue of a witness's failure "to come forward," and held that "The Mississippi Rules of evidence do not address whether a witness's earlier silence may be used to impeach his testimony." *Id.* At 1100. We noted that the United States Supreme Court "specifically left to each jurisdiction the opportunity to 'formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.'" *Jenkins v. Anderson*, 447 U. S. 231 (1980). In the case *sub judice*, the State had already tried the Appellant in another case before this case, and Regina Hickson alleged that the State presented testimony in the previous trial which was not truthful or accurate, when records were easily available to verify the same. Thus this case is easily distinguishable from *Powell*, in which this Court held that under the circumstances of that case, "the prosecution conducted a fair cross-examination in an attempt to expose potential falsehoods; hence this assignment of error is without merit." *Id.* at 1100.