HINKEBEIN, J., for the Court:
¶ 1. Steven Harrison (Harrison) was convicted August 4, 1997 in the Circuit Court of Jones County on one count of aggravated assault and one count of simple assault. On Count One of aggravated assault he was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections, with ten years suspended. On Count Two of simple assault, he was sentenced to six months imprisonment and ordered to pay a fine of $500. These sentences were to run consecutively to any other prior sentences imposed upon Harrison. Aggrieved by his conviction, he appeals to this court on the following grounds:
I. THE COURT ERRED IN NOT STRIKING FOR CAUSE A JUROR WHO WAS A COUSIN OF THE DISTRICT ATTORNEY’S CHIEF INVESTIGATOR.
II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT’S MOTION TO EXCLUDE THE IN-COURT IDENTIFICATION OF THE DEFENDANT, IN THAT IT WAS NOT ESTABLISHED THAT THE IN-COURT IDENTIFICATION HAD AN INDEPENDENT ORIGIN FROM THE PRIOR LINEUP IDENTIFICATION WHICH HAD THE POTENTIAL FOR IMPROPER INFLUENCE AND SUGGESTIVENESS AND, THEREFORE, THE DEFENDANT WAS DENIED A FAIR AND IMPARTIAL TRIAL UNDER DUE PROCESS PROVISIONS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND BY MISSISSIPPI CONSTITUTION ARTICLE III SECTION 14.
III. THE COURT ERRED IN ALLOWING THE VICTIM TO TESTIFY WHAT THE DOCTOR TOLD HIM WAS WRONG WITH HIS JAW, AS SUCH TESTIMONY WAS HEARSAY, AND VIOLATED THE DEFENDANT’S RIGHT TO CONFRONT THE DOCTOR.
IV.IN COUNT ONE, THE TRIAL COURT IMPROPERLY REFUSED A PEREMPTORY INSTRUCTION FOR THE DEFENDANT AS TO THE CHARGE OF GUILTY OF AGGRAVATED ASSAULT AND WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.
FACTS
¶ 3. On the night of October 25,1996, sixty-seven-year-old Robert Cochran (Robert) and his wife Eleanor Cochran (Eleanor) were watching television in their Ellisville home. At about nine o’clock, there was a knock at the back door. Eleanor testified at trial that she peered through the window of the door and saw a young man that she initially mistook for her grandson. When she opened the door, the man told her his car had broken down, and he needed to use the phone. Eleanor testified that after the man pretended to make a call on her cordless phone, he pushed his way into the house, slamming the door against her and knocking her to the floor. Robert testified he was sitting in his recliner when he heard his wife yell and saw her knocked down. The man then struck Robert in the face, knocking him out of the chair and onto the hearth of the fireplace. The man then struck Robert again in the face. The record does not reflect that anything was taken from the Cochran home, although the facts suggest this was a botched robbery. As the man fled out the back door, he told the couple he had a gun in his car, but no weapon was ever actually seen. The last the couple saw of the fleeing assailant and a possible accomplice were the taillights of a car heading out of them driveway.
¶ 4. Robert suffered a split lip and bruises from the blows to his face, and he testified at *980 trial that a dentist later told him that some of his teeth were loosened and his jaw had been dislocated. There is no evidence that Eleanor suffered any injuries aside from skinned elbows. Both Robert and Eleanor testified they had a good opportunity to see the intruder’s face during the incident. Both also testified they identified Harrison as their assailant from a sheriffs department line-up. Prior to Eleanor’s in-court identification of Harrison, defense counsel requested voir dire of the witness. Outside the presence of the jury, Eleanor further testified that she received a call from her nephew the night of the attack, who suggested to her that Harrison was the person who had assaulted the couple. The record does not reflect the basis of the nephews’ statement. She also testified that on that same night, her- grandson showed her a picture of a tuxedo-clad Harrison in a 1995 South Jones County High School yearbook. Both Eleanor and later her husband testified that the yearbook picture did not look like the sweatshirt clad intruder. She viewed the picture in the yearbook prior to identifying Harrison in the line-up. Harrison moved for the trial court to exclude any in-court identification on the grounds that the yearbook constituted suggestive pre-identification. The trial court denied the motion and both Robert and Eleanor subsequently identified Harrison in open court as their assailant. The jury’s subsequent verdict of guilty against Harrison brings his case before this Court.
I. THE COURT ERRED IN NOT STRIKING FOR CAUSE A JUROR WHO WAS A COUSIN OF THE DISTRICT ATTORNEY’S CHIEF INVESTIGATOR.
¶ 5. During jury selection Harrison . requested that prospective juror Michael Walters be struck for cause on the grounds he was the cousin of Morris Walters, an investigator with the Jones County District Attorney’s Office. Harrison’s request was overruled by the trial court. Harrison did not use any of his six peremptory strikes to exclude Michael Walters, and consequently he was seated as a juror. During voir dire by the trial court, Michael Walters stated he had not discussed the case with his cousin and the family relationship would not affect his ability to render a decision in the case. The record also reflects that Morris Walters was not a prosecution witness against Harrison and had no apparent involvement in the case. Harrison argues the trial court committed reversible error by refusing to strike for cause and allowing Michael Walters to sit as a juror. The State contends that Michael Walters’s family relationship with the district attorney’s investigator was not enough to warrant striking for cause, especially in light of his assurances to the trial court. We agree with the State.
¶ 6. In support of his argument, Harrison cites the Mississippi Supreme Court’s recent holding in Taylor v. State, 656 So.2d 104, 110-11 (Miss.1995). In Taylor, the trial court was found to have erred in failing to strike for cause a juror whose sister was a Hinds County assistant district attorney. Id. In treating the Taylor issue as one of first impression, the court primarily cited as persuasive authority the holding in People v. Macrander, 828 P.2d 234, 242 (Colo.1992), which states:
[T]hat a prospective juror who is related within the third degree by blood, adoption, or marriage to a deputy district attorney presently serving on the staff of the elected district attorney responsible for the criminal prosecution is related to an “attorney of record” for purposes of a challenge for cause-
Id. In Macrander, the Colorado court held that since the juror in question was the mother of a deputy district attorney, albeit not one involved in the case in question, she should have been excluded for cause since she was related within the third degree. Id. Likewise, the brother of the assistant district attorney in Taylor was also related within the third degree and should have been excluded for cause in order to eliminate jurors with possible express or implied prejudices. Taylor v. State, 656 So.2d 104, 111 (Miss.1995).
¶ 7. However in the case sub judice, the family relationship and degree of consanguinity would suggest a different result. Under Mississippi law, where the degree of a family relationship is at issue, “the civil law rule in *981 computing relationship shall govern.” Miss. Code Ann. § 1-3-71 (Rev.1998). This method of computation is accomplished through the use of a table of consanguinity. Jesse Dukeminier & Stanley M. Johnson, Wills, Trusts, and Estates 109 (4th ed.1990) (example of a table of consanguinity); See also Owen v. State, 255 Ala. 354, 51 So.2d 541, 542 (Ala.1951). In the instant case, the table of consanguinity shows that the relationship between juror Michael Walters and Investigator Morris Walters is that of the fourth degree, and thus beyond the range where a strike for cause is mandated by the aforementioned eases. This is not to suggest, however, that a trial court should base such decisions on a blind adherence to a formula and disregard other germane facts. In Taylor, the juror lived two houses away from his sister, the assistant district attorney, and stated that he talked with her all the time. Taylor, 656 So.2d at 109. In the ease sub judice, there is nothing to suggest that Michael Walters had such a close personal relationship with his investigator cousin. Likewise, the Mississippi Supreme Court has long held that “there is no reason why, if left unchallenged peremptorily, an officer’s relative should not serve on a jury if otherwise qualified to follow the law and the evidence.” Mhoon v. State, 464 So.2d 77, 81 (Miss.1985); see also Walker v. State, 671 So.2d 581, 624 (Miss.1995). There is no suggestion that Michael Walters was not qualified as a juror, and he personally assured the trial court that his family relationship would not influence his decision. In addition, jury instruction C.01 contains the following exhortation:
It is your duty to determine the facts and to determine them from the evidence produced in open court. You are to apply the law to the facts and in this way decide the case. You should not be influenced by bias, sympathy or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork or conjecture.
The Mississippi Supreme Court “assumes that juries follow the instructions given to them by the trial court.” Christmas v. State, 700 So.2d 262, 270 (Miss.1997). As such, the record reveals nothing to suggest that Michael Walters did not follow this instruction or that his inclusion as a juror worked any prejudice on Harrison. Accordingly, we find there is no merit to this assignment of error.
II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT’S MOTION TO EXCLUDE THE IN- ' COURT IDENTIFICATION OF THE DEFENDANT, IN THAT IT WAS NOT ESTABLISHED THAT THE IN-COURT IDENTIFICATION HAD AN INDEPENDENT ORIGIN FROM THE PRIOR LINE-UP IDENTIFICATION WHICH HAD THE POTENTIAL FOR IMPROPER INFLUENCE AND SUGGESTIVENESS AND, THEREFORE, THE DEFENDANT WAS DENIED A FAIR AND IMPARTIAL TRIAL UNDER DUE PROCESS PROVISIONS AS GUARANTEED BY THE FIFTH AND ' FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND BY MISSISSIPPI CONSTITUTION ARTICLE III SECTION 14.
¶8. Harrison argues that the trial court erred in denying a motion to exclude Eleanor and Robert Cochran’s in-court identification of Harrison as their assailant. Harrison claims the- couple’s viewing of a high school yearbook containing his picture, a short time after the attack but before the sheriffs department line-up, was a suggestive pre-iden-tification. The State argues that the in-court identifications were properly admitted since Eleanor and Robert’s identification of Harrison had an independent source. We agree with the State.
¶ 9. The Mississippi Supreme Court has held that a “suggestive pre-trial identification does not preclude an in-court identification by an eyewitness who viewed the suspect. ...” Davis v. State, 510 So.2d 794, 795 (Miss.1987). The court further noted that the in-court identification could be precluded if viewed “from the totality of the circumstances the identification was so impermissi-bly suggestive as to give rise to a very substantial likelihood of irreparable misiden-tification. Id. at 795-6. In Davis, the defendant broke into a woman’s home and raped *982 her on her living room couch. During the sexual assault, the women reached over to a table and grabbed a brass statue with which she “beaned Davis on the head numerous times.” Id. at 795. The defendant fled, leaving a trail of blood. When police officers took the victim to the hospital, they learned that there was also a man in the emergency room, being treated for head injuries. Id. The victim was taken to see the man being treated and identified him as her attacker and subsequently made an in-court identification. Id. In Davis, the court relied on the guidelines for judging the admissibility of identification testimony as enumerated by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered include:
the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
Manson, 432 U.S. at 114, 97 S.Ct. 2243. In applying these factors to the case sub judice, the record shows that both Eleanor and Robert had ample opportunity to view Harrison at the time of the assaults and there is little doubt that all their attention was focused on the intruder. Both Eleanor and Robert quickly and unequivocally identified Harrison when they viewed him during the sheriffs department line-up four days after the crime. Since both victims did not notice any similarity between their assailant and Harrison’s picture in the high school yearbook, it is doubtful that viewing the yearbook had any corrupting effect on their identification of Harrison in the line-up or in-court. Harrison’s reliance on the holding in Hickson v. State, 697 So.2d 391, 395 (Miss.1997) can be distinguished from the instant ease. In Hickson, the victims were unsure of their identification of the defendant, and the State subpoenaed them to attend another trial of Hickson. Id. The court held this was improper bolstering and suggestive identification. Id. In the case sub judice, the victims expressed no doubt whatsoever about their ability to identify Harrison. It is also noteworthy that in Davis, the suggestive pre-identification of the defendant by the victim was done at the request of the police and the court found no error in the trial court allowing the in-court identification. Davis, 510 So.2d at 795. In the case sub judice, the yearbook was produced by a family member and there is no indication that it had any impact on the subsequent identifications. We find this assignment of error to be without merit. ■'
III. THE COURT ERRED IN ALLOWING THE VICTIM TO TESTIFY WHAT THE DOCTOR TOLD HIM WAS WRONG WITH HIS JAW, AS SUCH TESTIMONY WAS HEARSAY, AND VIOLATED THE DEFENDANT’S RIGHT TO CONFRONT THE DOCTOR.
¶ 10. During the State’s direct examination of Robert Cochran, the following exchanges took place as Robert answered questions regarding the injuries he suffered:
Q: All right. What, if anything— what’s wrong with your jaw?
A: He said—
MR. BUCKLEY: I object, your Honor.
Q: Don’t tell us what they said was wrong with your jaw.
. MR. BUCKLEY: It calls for expert testimony.
Q: Not what somebody told you
A: Well the doctor then. Well my jaw hurt. I couldn’t hardly open my mouth. I knew something was wrong. So I went to the doctor. He told me it was dislocated and gave me some medication.
MR. BUCKLEY: I continue my objection. Hearsay grounds, cross examination, your Honor. Presentative expert rebuttal witnesses.
THE COURT: Overruled.
Q: Are you continuing to have trouble with your jaw?
A: Yes, I’m still having trouble with my jaw.
The record reveals that there was no expert witness testimony by a doctor as to the ex *983 tent of Robert’s injuries. Harrison argues that Robert’s testimony violated the hearsay rule and was improper lay opinion and thus the trial court committed error in allowing its admission. He further asserts that such error cannot be deemed harmless, since it was the sole support for the State’s claim that the assault was aggravated as opposed to simple. The State argues that Robert’s testimony was acceptable lay opinion within the limits set by M.R.E. 701, and in the alternative, any error was cured during Harrison’s cross-examination of Robert. We find no merit to this assignment of error, but on somewhat of a different basis than that offered by the State.
¶ 11. Under Mississippi law, hearsay is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). Under this definition, Robert’s statement that the doctor had told him his jaw was dislocated was hearsay. The issue before this Court is whether the admission of the testimony rises to the level of reversible error. The Mississippi Supreme Court has held that “[wjhere corroborative evidence exists and the hearsay evidence is merely cumulative, the admission may be held to be harmless.” Young v. State, 679 So.2d 198, 203 (Miss.1996) (citing Jones v. State, 606 So.2d 1051, 1057 (Miss.1992)). Excluding any mention of the doctor’s diagnosis, Robert’s testimony was sufficient to convey to the jury that he had suffered a serious injury as the result of Harrison’s attack and that the symptoms persisted nearly a year after the attack. Since the hearsay was merely cumulative, any error is harmless. Robert’s mere mention of his doctor’s comment becomes even less significant after Harrison’s subsequent cross-examination, which brought out in great detail what the doctor had tqld Robert about his injuries. “It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial.” Fleming v. State, 604 So.2d 280, 289 (Miss.1992).
¶ 12. Harrison further argues that the admission of the hearsay cannot be considered harmless since it was the sole support for the State’s claim that the assault was aggravated as opposed to simple. We would disagree. The jury heard additional evidence that Robert, who weighed 220 pounds, was knocked out of his reclinen and onto the fireplace hearth by the first of the two blows to the face and also suffered facial cuts and bruises. The jury also viewed photographs of Robert taken the day after the attack, showing the extent of his injuries. In jury instruction C-2, the jury was given the option of deciding whether those blows to the face warranted a verdict of aggravated assault or merely simple assault. The Mississippi Supreme Court has stated “.that whether or not hands and closed fists constitute, under § 97-3-7(2)(b), a ‘means likely to produce serious bodily harm’ involves a question of fact to be decided by the jury in light of the evidence.” Jackson v. State, 594 So.2d 20, 24 (Miss.1992). Accordingly, we find no merit to this assignment of error.
IV. IN COUNT ONE, THE TRIAL COURT IMPROPERLY REFUSED A PEREMPTORY INSTRUCTION FOR THE DEFENDANT AS TO THE CHARGE OF GUILTY OF AGGRAVATED' ASSAULT AND WAS CONTRARY TO THE LAW AND' AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 13. Harrison claims the trial court erred in refusing a peremptory instruction as to the charge of aggravated assault and that the law and evidence warranted a verdict of simple assault. The gist of the argument is that Harrison only hit Robert with his fists and that Robert required no hospitalization or stitches and did not lose any teeth. The State argues it was up to the jury to decide. We agree.
¶ 14. Mississippi’s aggravated assault statute, under which Harrison was indicted and convicted reads as follows:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or *984 knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm;
Miss.Code Ann. § 97-3-7(2) (Rev.1994). Harrison argues that two punches in the face cannot be a “means likely to produce death or injury” and to hold otherwise would result in the circuit courts being flooded with assault cases that properly belong in municipal or justice courts. This same issue was addressed by the Mississippi Supreme Court in Jackson v. State, 594 So.2d 20 (Miss.1992). In Jackson, the defendant was convicted of aggravated assault upon his ex-wife. Id. at 22. He claimed on appeal that his fists could not be considered deadly weapons and the charge in the indictment should have been for simple assault. Id. at 23. In Jackson, the Mississippi Supreme Court clearly stated:
We hold that whether or not hands and closed fists constitute, under § 97-3-7(2)(b), a “means likely to produce serious bodily harm” involves a question of fact to be decided by the jury in light of the evidence. The responsibility for determining likelihood remains with the jury which may be left free to give due weight to the characteristics of the parties, the place, the manner in which hands and fists are used, and the degree of force employed.
Id. at 24. The record shows that the force of Harrison’s first blow knocked Robert out of his recliner and onto the fireplace hearth, evidencing a great degree of force. The jury in the case sub judice was also free to decide what weight would be given to the fact that Harrison, who was nineteen years old at the time of the crime, struck a much older man in his own home. We find that there was sufficient evidence from which the jury could find that Harrison’s use of his fist was a means likely to produce death or serious bodily harm. Harrison makes much of the fact that Robert was not hospitalized and did not lose any teeth. The court in Jackson held that it is not necessary “under this section for the State to prove the victim suffered ‘serious’ bodily injury. Mere ‘bodily injury’ is sufficient so long as it was caused with ‘other means likely to produce death or serious bodily harm.’ ” Jackson, 594 So.2d at 24. Since the testimony clearly shows that Robert suffered bodily injury at Harrison’s hands, we find no merit to this assignment of error.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF COUNT ONE OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY(20) YEARS WITH TEN YEARS SUSPENDED; COUNT TWO OF SIMPLE ASSAULT AND SENTENCE OF SIX (6) MONTHS AND A $500 FINE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES TO RUN CONSECUTIVE TO ANY AND ALL PREVIOUS SENTENCES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE AND SOUTHWICK, JJ„ CONCUR.