834 So.2d 714 (2002)
Kevin Keith RUSSELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00488-COA.
Court of Appeals of Mississippi.
November 5, 2002.
Rehearing Denied January 7, 2003.
*715 Robert H. Koon, Gulfport, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Kevin Keith Russell was convicted of kidnapping and rape by a Harrison County Circuit Court jury. On appeal, he argues that his motion for a new trial based on newly discovered evidence was erroneously denied, and that the evidence to support the verdict was so insubstantial as to entitle him to an acquittal or else a new trial. We disagree with these assertions and affirm.

FACTS
¶ 2. On February 6, 1998, Deborah Scarpero was visiting her mother, who was in Gulfport undergoing outpatient surgery. When her mother was discharged just after 6:00 P.M., Scarpero went to the surgical center parking lot to retrieve her car. Kevin Russell approached her in the parking lot, forced her into her vehicle and drove out of the lot. He did not threaten her with any weapon. Scarpero made one attempt to escape in Gulfport by jumping from the car when it slowed down. Russell grabbed her arm and hair and pulled her back inside the vehicle. Russell then tied her hands to the car's cup holder with rope.
¶ 3. En route from Gulfport to New Orleans, Russell lost control of the vehicle and slid into a ditch. An armed security officer from the Stennis Space Center stopped and offered assistance. He took them to a Welcome Center where a couple in a tractor-trailer agreed to pull the car from the ditch. Scarpero made no attempt to solicit help.
¶ 4. Russell made Scarpero drive for some time before stopping at a motel. Russell displayed a knife and threatened to have Scarpero's children killed if she attempted to escape. The following day, they drove to a motel in Kansas City, Missouri. Scarpero was left alone for several hours at the motel but made no attempt to escape or telephone anyone. When Russell returned to the room, he attempted to coerce Scarpero into smoking something. When she refused, he blew the smoke in her face and then sexually assaulted her. Scarpero begged him to stop and told him he was hurting her. Afterward, Russell forced Scarpero to bathe with him to wash away the evidence.
¶ 5. The following day, Russell drove to Jackson, Mississippi, checked into a motel and again assaulted Scarpero. Some hours later, Russell drove back to Gulfport to the bus station and made a telephone call. Scarpero stayed in the car, making no attempt to escape. At approximately 10:00 P.M., Russell drove Scarpero to a *716 Hattiesburg Shoney's Restaurant and told her to wait there for two hours before leaving in order to give him time to escape. Scarpero entered the Shoney's alone. Approximately five minutes later, Russell entered the restaurant and had Scarpero write a check on her account for $200. Russell filled in his name as payee, and then left.
¶ 6. Scarpero waited as she was told. A waitress eventually had her driven to a hospital emergency room just before midnight on February 10, 1998. Scarpero told personnel that she had been kidnapped from the parking lot of the Gulfport surgical center and sexually assaulted. Tests performed on Scarpero confirmed the presence of semen. Scarpero also had bruises on her left upper arm. Medical records indicate Scarpero was very upset and crying when she appeared in the emergency room. Blood tests were positive for the presence of marijuana and opiates.
¶ 7. Scarpero was interviewed on several occasions by various law enforcement officials. Each of her initial statements varied or contradicted each other in some fashion. Scarpero eventually admitted that her prior statements were false. She stated that her abductor fabricated a story for her to use to assist his escape. Scarpero did not tell police the truth because her abductor had told her he was involved with "Mafia-types" who were watching her home and would kill her children.
¶ 8. Scarpero identified Russell from a photo array on February 13, 1998. He was charged with kidnapping and two counts of rape. He asserted at trial that Scarpero had gone with him willingly because she was unhappy with her marriage and consented to sex with him. He stipulated that the semen identified in the rape kit was his. A jury convicted Russell on the kidnapping charge and on one of two counts of rape.

DISCUSSION
1. Newly discovered evidence.
¶ 9. Scarpero gave a statement to the Hattiesburg police while in a hospital emergency room; the State failed to provide this statement in discovery. Russell alleges that this constitutes newly discovered evidence warranting a new trial because the statement contained yet another inconsistent version of events that may have persuaded the jury of Scarpero's lack of credibility.
¶ 10. In this statement, Scarpero told police that she had been forced into her car at gunpoint by a black man with two gold teeth, a long scar down the left side of his face, who spoke with a foreign accent and called himself Paul. She said that Paul had taken her wallet and checkbook, and knew a great deal about her family including where they lived. He threatened to have her children killed if Scarpero did not cooperate. Scarpero had further stated that Paul had given her to two other black men who tried to get her to smoke something before sexually assaulting her with an unknown object.
¶ 11. The purpose of post-trial motions is to bring to the court's attention facts unknown at the time of trial. Williams v. State, 669 So.2d 44, 52 (Miss. 1996). In order to grant a new trial on the basis of newly discovered evidence, the defendant must show by a preponderance of the evidence that the evidence was discovered after trial, that diligence would not have led to its earlier discovery, that it is material and not merely cumulative nor impeaching, and that it is such that it would change the outcome if a new trial were granted. Howell v. State, 354 So.2d 1124, 1127 (Miss.1978). At the hearing on *717 the motion, the State argued that the inconsistencies in Scarpero's first statement from her trial testimony were known to the defendant because of her later inconsistent statements.
¶ 12. A review of the trial transcript shows that Russell cross-examined Scarpero on almost every detail that she had given to the Hattiesburg police. The only detail in the report not raised on cross-examination was that an officer overheard Scarpero tell her father that she and Russell had stopped to buy drugs. However, Russell was aware of drug use even without access to this police report. The emergency room records were provided in discovery and the treatment sheet notes the presence of marijuana and opiates in Scarpero's system. Russell cannot now claim he was unaware of, and thus prejudiced by, this point.
¶ 13. Having had all of the statement's details before them, the jury chose to believe Scarpero. Russell argues that it is the cumulative effect of having one more instance of inconsistency that might have swayed the jury. We do not find that a report that combines the information into a single document would have had any greater impact than what the jurors did hear. That is especially true when the new report is in principal details the same as some of the statements that Russell did have to use in his counsel's examination of Scarpero. Her explanation of the reasons for these inconsistencies from trial testimony was no less believable if proof was offered of one more occasion during which Scarpero told the same fabrications. If anything, consistent inconsistencies from the truth support her explanation that fear drove her initial statements.
¶ 14. Russell further asserts that failure of the State to provide discoverable material is reversible error, in reliance upon Hickson v. State, 697 So.2d 391(Miss.1997). It is true that the failure of the State to abide by discovery rules may be cause to grant a new trial. However, Hickson did not rely solely upon a discovery violation in granting a new trial to the defendant. The violation was coupled with trial "ambush" of the withheld information and some questionable conduct on the part of prosecutors. Id. at 395. The court looked to the effect of the withheld information rather than the discovery violation alone. Russell was not ambushed at trial, nor was he prejudiced by the State's failure to provide the written statement. He was aware of all information contained within the report and cross-examined the witness on these very points. We find no error in denying a new trial.
2. Sufficiency and weight of evidence
¶ 15. Russell also argues that his conviction was not supported by sufficient evidence and was contrary to the weight of the evidence. It is his contention that evidence of the many ignored opportunities that Scarpero had to escape established that she willingly accompanied him and overwhelmingly points to his innocence such that his conviction should be overturned.
¶ 16. When reviewing a claim of insufficient evidence on appeal, we look to the evidence most supportive of the State's case. Harrell v. State, 583 So.2d 963, 964 (Miss.1991). "All evidence supporting, or tending to support the verdict, as well as all reasonable inferences that may be drawn from the evidence, must be accepted as true." Id. Where there is competent evidence to sustain a verdict, it will not be disturbed on appeal. Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 17. Taking as true the evidence of guilt presented by the State, we find there was sufficient evidence to sustain the conviction. *718 The prosecution presented both testimonial and physical evidence which, if deemed true, was competent to sustain the verdict. That she was sufficiently fearful of her kidnapper not to try to escape even when she was temporarily out of his sight was a conclusion that the jury could accept.
¶ 18. Likewise, we will order a new trial only when the overwhelming weight of evidence is so contrary to a finding of guilt that the conviction was an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). It is the jury's duty to weigh conflicting testimony and witness credibility. Gandy, 373 So.2d at 1045. Juries are empaneled to resolve questions of fact. We will not substitute our factual findings for that of the jury in a contest of credibility.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I KIDNAPPING, AND COUNT III RAPE, AND SENTENCE OF LIFE ON EACH COUNT TO RUN CONSECUTIVELY AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.