662 So.2d 1095 (1995)
Johnnie Mae POWELL
v.
STATE of Mississippi.
No. 92-KA-00253-SCT.
Supreme Court of Mississippi.
October 26, 1995.
*1096 Shelly Nichols Ellis, Ellis, Ellis & Fisher, Tupelo, for appellant.
Michael C. Moore, Attorney General, DeWitt T. Allred, III, Sp. Asst. Attorney General, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
Johnnie Mae Powell was convicted by a jury of the Clay County Circuit Court on January 23, 1992, for the murder of Jennifer Hodges. She was sentenced to serve life imprisonment in the custody of the Mississippi Department of Corrections. After post-trial motions were denied, Powell timely perfected this appeal, contending that the circuit court erred in allowing rebuttal witness Linda Johnson to testify; in admitting evidence of the injury of Sammy Franks; in allowing the State to question defense witnesses on cross-examination about not "coming forward" to the police; and finally, if one of these errors by itself does not constitute reversible error, then the errors cumulatively prejudiced her. Finding no merit to these assertions, we affirm her conviction.

FACTS
On March 24, 1991, Powell, Mary McCoy, and her boyfriend's stepfather, John Ed Robinson, went to Rabbit's Place, also known as the "Una Disco Club," in Una, Mississippi. Powell was sitting alone in Robinson's truck when four girls pulled into a nearby parking space. Marilyn Hodges, the victim's sister, and her cousin, Elizabeth Darden, got out and sat on the hood. Jennifer Hodges, the victim, and her friend, Essie Franks, stayed inside the car. Jennifer Hodges and Powell exchanged threats, but "who said what first" differs between each side's witnesses.
Jennifer Hodges and Powell were acquainted with each other from various beauty pageants. They had recently tangled after Powell won the "Miss Got the Body Contest." It appears from the record that Powell's boyfriend was the source of the unpleasantries between Powell and the Hodges sisters.
The parties left Rabbit's and reconvened later that night at the OK Corral, another nightclub in Una. Marilyn and Jennifer Hodges, as well as Darden, were standing at the doorway when Powell arrived. Marilyn Hodges testified that Powell "brushed her shoulder" and threatened her.
Some time later, Marilyn Hodges and Powell got into a fight. Hodges was hit over the head with a gin bottle, but did not recall who hit her. Robinson broke up the fight and said, "All of y'all are not going to jump on her [Powell]."
Marilyn Hodges went outside and told her sister what had happened. According to several witnesses, Jennifer Hodges approached Powell and asked her "Why did you cut my sister?" to which Powell allegedly replied, "I'll cut you too," pulled out a.25 caliber Raven semiautomatic pistol and began shooting. After two or three shots, Jennifer Hodges fell to the ground. Powell testified she pulled the gun because she saw the victim reach for a gun. Marilyn Hodges denied that she and her sister had fought *1097 over a purse containing a gun or even that they had a gun in their possession. Vernell Hodges, Jennifer and Marilyn's mother, testified that when she retrieved her daughter's purse at the hospital it contained only a wallet. Neither Marilyn Hodges nor another eyewitness, Parsons, saw Powell point the gun directly at Jennifer, but Darden testified that she did. Michael Brooks testified that Greg gave Powell the gun and told her, "Show dem [sic] bitches what you can do."
Marilyn Hodges became hysterical after her sister fell to the ground, but Darden encouraged her to run because Powell still had the gun. Parsons testified that Powell told Marilyn Hodges, "I'll shoot you, too." and began chasing her. Powell admitted that she then chased Marilyn out to John Orr's car and continued firing at her. She opened the door and pointed the gun in Marilyn Hodges' face, but did not fire. Apparently the gun was empty. After the shooting was over, Powell was heard to say, "I'm tired of them bitches fucking with me."

ARGUMENTS AND DISCUSSION OF THE LAW

I.

Whether the trial court erred in allowing rebuttal witness Linda Johnson to testify?
On rebuttal, the State called Linda Johnson, a patron at the OK Corral on the night of the shootings. Her testimony was intended to show that Hodges was unarmed at the time of the shooting, thus destroying Powell's claim of self-defense. Powell's counsel opposed the testimony after it was proffered outside the presence of the jury. She asserted that Johnson had been in the witness room with other witnesses who previously had testified and possibly had discussed the questions they were asked by the defense attorney. The circuit court overruled the objection. Johnson testified that she did not see the shooting, but heard a firecracker-like sound and saw Hodges fall to the ground. Johnson further testified that after she turned Hodges over to check her condition, she immediately picked up her purse, which had a closed zipper, and put it in the back seat of the car.
Powell sets forth two assignments of error with respect to Johnson's testimony: (a) the witness sequestration rule was violated and she should not have been allowed to testify, and (b) she was not a proper rebuttal witness since she should have been called in the State's case-in-chief.

a. Whether the trial court erred in allowing the prosecution to put on Linda Johnson in rebuttal, after it was discovered that witnesses violated the sequestration rule in her presence?
It was established during the proffer that Johnson had not been present in the courtroom at any time during the trial. However, on cross-examination, it was revealed that in the witness room, some of the other witnesses talked with her about the questions they had been asked. The circuit court, however, ruled that:
The court finds that based on the testimony before it, that this particular witness was not in violation of the rule and did not come into the courtroom during any of the testimony. This witness's testimony was that she only arrived pursuant to a subpoena yesterday and did not enter the courtroom and hear any of the testimony ... Further, when witnesses are sequestered they are placed in witness rooms and instructed not to discuss their testimony with others. It appears that this witness has not discussed her testimony with others... .
M.R.E. 615 provides that, at the request of a party, the court shall order witnesses excluded from the courtroom so that they cannot hear the testimony of other witnesses. Remedies for violations include prohibiting the witness from testifying, striking his testimony, citing him for contempt, or allowing a "full-bore" cross-examination. Gerrard v. State, 619 So.2d 212, 217 (Miss. 1993). It is within the trial judge's discretion to determine what remedy is appropriate. Baine v. State, 606 So.2d 1076, 1083 (Miss. 1992).
In this case, the circuit court allowed Johnson to be examined while the jury was out, as *1098 well as allowing a "full-bore" examination when the jury returned. In his ruling, he stated that it appeared that Johnson had not discussed her testimony with others, and that "in any event, one of the previous witnesses who testified during the course of the trial made reference to this individual as placing the purse in the car."
We have recognized that the witness sequestration rule "serves to discourage a witness's tailoring her testimony to what she has heard from the stand" and to "facilitate exposing false testimony." Baine v. State, 606 So.2d 1076, 1083 (Miss. 1992); Moffett v. State, 540 So.2d 1313, 1317 (Miss. 1989); Doby v. State, 532 So.2d 584, 589 (Miss. 1988). Johnson, however, stated that the discussions in the witness room had no weight on how she would have testified. In Douglas v. State, 525 So.2d 1312 (Miss. 1988), this Court held that, "[w]hen [a] violation of the sequestration rule is assigned as error on appeal, the failure of the judge to order a mistrial or to exclude testimony will not justify reversal on appeal ... absent a showing of prejudice sufficient to constitute an abuse of discretion." Id. at 1318. Since Johnson's testimony, at best, was cumulative, Powell was not prejudiced to the extent necessary to require reversal.

b. Whether the trial court erred in allowing the prosecution to put on Linda Johnson's testimony in rebuttal instead of its case-in-chief?
Powell accuses the prosecution of withholding Johnson's testimony as a surprise intended to defeat her defense. The State, however, discovered through one of its witnesses only several days before the trial that Johnson had knowledge of the circumstances surrounding Hodges' death. Powell relies on Roney v. State, 167 Miss. 827, 150 So. 774, 775 (1933), which we recently reaffirmed in Smith v. State, 646 So.2d 538 (Miss. 1994), as being outcome determinative. Generally, the party who has the burden of proof must introduce all substantive evidence in his case-in-chief. Smith, 646 So.2d at 543; Roney, 150 So. at 775. However, where there is a doubt as to whether evidence is properly case-in-chief or rebuttal evidence, then the court should resolve the doubt in favor of reception into rebuttal if:
(1) its reception will not consume so much additional time as to give an undue weight impractical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
Smith, 646 So.2d at 543, quoting Riley v. State, 248 Miss. 177, 157 So.2d 381, 385 (1963).
However, in cases were there is no doubt that the testimony should have been offered in the case-in-chief, allowing the testimony into evidence in rebuttal is reversible error. Hosford v. State, 525 So.2d 789, 791 (Miss. 1988). As distinguished from the case sub judice, the State in Hosford made no effort during the presentation of its case-in-chief to present evidence of the defendant's alleged sexual acts with his stepchildren. In Powell's case, the State, through virtually every witness, attempted to determine whether anyone saw the victim with a gun or an opened purse. Hosford, 525 So.2d at 791.
In its case-in-chief, the State put on proof that the victim did not threaten the life of the defendant, had no weapon in her hand or purse, and that her purse was closed. Defense witnesses testified that Barr, who placed Hodges in the car, bragged about retrieving Hodges' gun from her purse. Johnson's testimony conflicted with Barr's testimony in that she said she put Hodges' purse in the back seat, and Barr claimed that the purse was in the front seat. Powell asserts that if Johnson's testimony had been offered in the prosecution's case-in-chief, she would have been better able to cross-examine Barr about the inconsistencies in his testimony. Powell states that she could not have used his testimony by surrebuttal; yet she did not make the request required by Roney.
This Court has encouraged liberal application of the rebuttal evidence rule. See Meeks v. State, 604 So.2d 748, 755 (Miss. 1992). Even though the defense was not informed of the prosecution's intent to call Johnson as a *1099 rebuttal witness until the third day of trial, it was within the trial judge's discretion to allow additional testimony. See Smith, 646 So.2d at 544. The State argues that its first contact with Johnson the day before trial did not indicate that she would be helpful toward explaining the circumstances, but after the "self-defense" argument developed around Jennifer Hodges' purse, it became crucial to put on more proof in this area.
Powell argues that she was prejudiced by the rebuttal because she might have structured her defense differently had Johnson testified as part of the State's case-in-chief. This argument was rejected by the Seventh Circuit when the appellant could cite no authority to support it. United States v. Braxton, 877 F.2d 556, 561 (7th Cir., 1989). Powell further asserts that she was unable to impeach Johnson or discover if any impeachment material existed. We impliedly rejected this argument in Griffin v. State, 504 So.2d 186 (Miss. 1987), where the State, in its case-in-chief, introduced a last-minute witness, and the trial court allowed the defense to interview him the night before his testimony. Griffin, 504 So.2d at 195. Likewise, the trial judge allowed Powell's attorney to cross-examine Johnson, outside the presence of the jury, before the actual testimony. Powell further argues that she was prejudiced because Johnson refused to be interviewed prior to the proffered testimony. However, a witness has the right to refuse to say anything. Tolbert v. State, 511 So.2d 1368, 1378 (Miss. 1987). Finally, she contends that she was prejudiced by allowing Johnson's testimony at the end of trial, thus impressing "on the minds of the jury immediately prior to entering the jury room to deliberate." This argument is not well founded since the State has the opportunity to present a rebuttal.
Johnson's testimony was offered as rebuttal evidence. The determination of whether evidence is properly admitted as rebuttal evidence is within the trial court's discretion. Wakefield v. Puckett, 584 So.2d 1266, 1268 (Miss. 1991). We find that the trial judge did not abuse this discretion.

II.

Whether the trial court erred in admitting evidence of the injury of Sammy Franks?
Sammy Franks was injured by one of the stray bullets fired by Powell at the OK Corral. Powell filed a Motion in Limine to exclude Franks' testimony as irrelevant since the Grand Jury did not indict Powell for assault or aggravated assault upon Franks and because his testimony was highly prejudicial. The motion was overruled on the basis of res gestae. The circuit court stated that if Franks was close enough to sustain injuries, he might have been an eyewitness to the incident. Franks' testimony consisted merely of an explanation of why he was at the nightclub that night and the injuries he sustained.
"Generally, evidence of a crime other than that charged in the indictment is not admissible evidence against the accused." Duplantis v. State, 644 So.2d 1235, 1246 (Miss. 1994). "However, where another crime or act is `so interrelated [to the charged crime] as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,' proof of the other crime or act is admissible." Id.; See also, Hurns v. State, 616 So.2d 313, 321 (Miss. 1993); Wheeler v. State, 536 So.2d 1347, 1352-53 (Miss. 1988) (prosecution allowed to mention that the defendant's bullets also hit another officer in order that a "rational and coherent story" could be told). Franks' testimony certainly was not critical to establishing Powell's guilt or innocence. Admission of the limited questions asked of him was harmless. Accordingly, this assignment of error is also without merit.

III.

Whether the trial erred in allowing the State to cross-examine defense witnesses for their failure to "come forward" to the police?
Powell next contends that the prosecution improperly questioned five of her witnesses about their failure to come forward to county law enforcement officers with information *1100 about the shooting, particularly with regard to the "gun story."
She claims the prosecution insinuated to the jury that since the witnesses had not come forward earlier, they now were obviously perjuring themselves. In Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the United States Supreme Court stated that "[c]ommon law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." Id. at 239, 100 S.Ct. at 2129. That the defense witnesses did not divulge Barr's statement regarding the gun may be probative to their truthfulness. The Court specifically left to each jurisdiction the opportunity to "formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." Id. at 231, 100 S.Ct. at 2125. The Mississippi Rules of Evidence do not address whether a witness' earlier silence may be used to impeach his testimony. We uphold the State's line of questioning. The prosecution conducted a fair cross-examination in an attempt to expose potential falsehoods; hence, this assignment of error is without merit.

IV.

Whether, if one of these errors by itself does not constitute reversible error, then the errors cumulatively prejudiced Powell?
Powell finally suggests that even if this Court declines to find reversible error in any one of her assignments of error, she is entitled to a new trial from the cumulative effect of these errors. See Griffin v. State, 557 So.2d 542, 552-54 (Miss. 1990) and Stringer v. State, 500 So.2d 928, 946 (Miss. 1986). Finding no merit to the assignments of error raised on appeal, we likewise find no merit to this issue.

CONCLUSION
Finding no merit to the assignments of error raised in this appeal, we affirm the judgment of the circuit court.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PRATHER, P.J., not participating.