782 So.2d 1244 (2000)
Anthony ESTES A/K/A Anthony Nash, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01727-COA.
Court of Appeals of Mississippi.
October 31, 2000.
Rehearing Denied January 9, 2001.
Certiorari Denied April 19, 2001.
*1248 H. Lee Bailey Jr., Winona, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Jackson, Attorney for Appellee.
BEFORE KING, P.J., LEE, AND MYERS, JJ.
LEE, J., for the Court:
¶ 1. Anthony Estes was convicted in the Circuit Court of Attala County of the crime of possession of a firearm by a convicted felon. He was sentenced to serve a term of three years in the custody of the Mississippi Department of Corrections and to pay a fine of $5,000. Aggrieved by the judgment entered against him, Estes appeals, raising the following issues: 1) that he was denied effective assistance of counsel, 2) that he was denied his right to a speedy trial, 3) that the court erred in the impeachment of certain defense witnesses, 4) that he was denied his right to be present during the selection of jurors, 5) that the court erred in refusing jury instruction D-4, and 6) that the verdict was against the overwhelming weight of the evidence. After a review of the record, we find no reversible error and affirm.

I. DID THE APPELLANT ESTABLISH A CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 2. Following Estes's conviction in the trial court, his motion for a new trial was overruled. On the same date, September 27, 1999, an order was entered which allowed Estes's counsel to withdraw from further representation and permitted the substitution of new counsel for the purpose of perfecting and prosecuting an appeal. On October 14, 1999, Estes's newly appointed counsel filed a motion for leave to file an amended motion for a new trial, asserting, among other issues, that Estes had received ineffective assistance of counsel. Because a notice of appeal was also filed on that same date, the subsequent hearing on the amended motion for a new trial, as well as the lower court's ruling on the motion, was null. Smith v. State, 445 So.2d 227, 232 (Miss.1984). In essence, the filing of the notice of appeal perfected the appeal and divested the lower court of jurisdiction. Martin v. State, 732 So.2d 847, 851 (Miss.1998). See M.R.A.P. 13 cmt.
¶ 3. Notwithstanding the procedural setting, we find nothing in reviewing the record to show support for Estes's allegations regarding his counsel's deficiency. Although unsupported elsewhere in the record, Estes cites his own testimony from the hearing on his amended motion for a new trial to supply proof of his trial counsel's ineffective assistance. A reviewing court does not act upon innuendo and unsupported representation of fact, Gerrard v. State, 619 So.2d 212, 219 (Miss. 1993), or upon assertions in briefs, but is bound by the matters contained in the official record. Saucier v. State, 328 So.2d 355, 357 (Miss.1976). The question presented on this appeal is not whether trial counsel was or was not ineffective but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte, on the basis of trial counsel's performance. Parham v. State, 229 So.2d 582, 583 (Miss.1969). The method that this issue is subject to review by an appellate court requires that such effectiveness, or lack thereof, be discernable from the four corners of the trial record. *1249 Read v. State, 430 So.2d 832, 841 (Miss. 1983).
¶ 4. The Mississippi Supreme Court has adopted the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in determining whether a claim of ineffective assistance of counsel should prevail. Alexander v. State, 605 So.2d 1170, 1173 (Miss.1992); Knight v. State, 577 So.2d 392, 394 (Miss.1991). In short, compliance with Stricklandrequires two components in order to merit reversal for a convicted defendant's claim that counsel's assistance was defective. First, the test requires a showing that counsel's performance was deficient in that he made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, Stricklandrequires that the appellant show that counsel's errors deprived him, as the defendant, of a fair trial with reliable results. Id.Where this Court determines defendant's counsel was constitutionally ineffective, the appropriate remedy is to reverse and remand for a new trial. Rankin v. State, 636 So.2d 652, 656 (Miss.1994).
¶ 5. A review of the record does not support Estes's contention that the failure of trial counsel to raise a Batson challenge pursuant to Batson v. Kentucky, 476 U.S. 79, 88, 106 S.Ct. 1712, 90 L.Ed.2d 69, renders his counsel's performance ineffective such as to merit a mistrial. Parham, 229 So.2d at 583. In addition, we do not find the authority upon which Estes relies, Triplett v. State, 666 So.2d 1356, 1362 (Miss.1995), to be persuasive. That court found that counsel was under a duty to ascertain that the record included the name, race and gender of the jurors excused peremptorily by the State, which he did not do. As a result of this failure, the information was not available for review, and this was one of several factors used by that court to determine that the appellant in that case did not have the benefit of effective assistance of counsel. Id. at 1362 n. 3. This information is clearly included in Estes's record. Though the State in the case sub judice struck five African American jurors, and the defense struck five white jurors of the twelve jurors selected, four were African Americans. Given that the decision to make or not make a Batson challenge falls within trial counsel's trial strategy and the wide latitude given him to which appellate courts must defer, Strickland, 466 U.S. at 686; Hall v. State 735 So.2d 1124, 1128 (Miss.Ct.App.1999), it is entirely reasonable to presume that trial counsel was comfortable with that jury.
¶ 6. Estes not only fails to establish the first prong of Strickland, that his counsel's failure to make a Batsonchallenge renders his performance deficient, he also fails to establish the second prong as well. That prong requires that the appellant show that counsel's errors deprived him, as the defendant, of a fair trial with reliable results. In Johnston v. State, 730 So.2d 534, 538 (Miss.1997), the supreme court reiterated the principle that a defendant "must affirmatively prove, not merely allege, that prejudice resulted from counsel's deficient performance." Because Estes fails even to allege prejudice, we find no merit to this assignment of error.

II. WAS THE APPELLANT DENIED THE RIGHT TO A SPEEDY TRIAL?
¶ 7. Every person accused of a crime has the right to a speedy trial. This right is secured independently by the Sixth and Fourteenth Amendments to the Constitution of the United States as well as by Article 3, Section 26 of the Mississippi Constitution of 1890. Estes contends that the trial court committed reversible error *1250 in overruling his motion to dismiss for failure of the State to accord him a constitutionally speedy trial. When the constitutional right to a speedy trial attaches, we are required to apply the balancing test announced in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine if the right to speedy trial has been denied. Smith v. State, 550 So.2d 406, 408 (Miss.1989). The four Barker factors, which must be balanced in light of all surrounding circumstances, are: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right to speedy trial and (4) prejudice resulting to the defendant. Barker, 407 U.S. at 530. "No one of the factors is, in itself, dispositive; rather they must be considered together in light of all the circumstances." Adams v. State, 583 So.2d 165, 167 (Miss. 1991).
¶ 8. Thus, the determination of whether a violation of the right to a speedy trial has occurred begins with a calculation of lapse of time. For constitutional purposes, the right to a speedy trial attaches and the time begins to run with arrest. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). Accordingly, time began running against Estes on November 16, 1998, the date of his arrest.
¶ 9. Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker to determine whether the constitutional right to a speedy trial has been denied. Vickery v. State, 535 So.2d 1371, 1376 (Miss.1988); Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988). This process requires first that we calculate the time periods. Second, those time periods must be analyzed in light of all circumstances and in conjunction with the four Barkerfactors. Vickery, 535 So.2d at 1376. Third, these factors must be balanced in light of the particular facts of the case, keeping in mind that it is often "impossible to determine with precision when the right has been denied." Barker, 407 U.S. at 521; Handley v. State 574 So.2d 671, 674 (Miss.1990). There is no mechanical formula to which these factors must be weighed and balanced.

APPLICATION OF BARKER FACTORS
¶ 10. The first Barker factor, length of delay, is considered to be the triggering mechanism for an inquiry into the other factors. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530. The time begins to run on the date of the arrest. Smith v. State, 550 So.2d 406, 408. Accordingly, time began running on November 16, 1998, the date of Estes's arrest. The number of days from that date to the date of his trial, September 16, 1999, is 304. A delay of eight months or longer is presumptively prejudicial. Id. Thus, further inquiry is mandated and factor one of the Barker balancing analysis is triggered, weighing against the State.
¶ 11. Consideration of the reason for the delay is called for as the second Barkerfactor. The State bears the responsibility of bringing a defendant to speedy trial. Turner v. State, 383 So.2d 489, 491 (Miss.1980). Any delays in prosecution attributable to a defendant tolls the running of time. Vickery, 535 So.2d at 1375. Likewise, any continuances for "good cause" will toll the running of time unless "the record is silent regarding the reason for delay," in which case "the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue." Id. at 1377. In accordance, the court found that 283 days were *1251 chargeable to the State. The record shows that the major portion of the delay is attributed to the fact that Estes's first indictment for the crime of burglary was dismissed. The reason given for the dismissal was that a witness had recanted a statement that would have shown Estes's guilt. Such delays weigh against the State, but not heavily. Barker, 407 U.S. at 531. Another factor to consider is whether there is an indication that the delay preceding the trial was a deliberate attempt to hamper the defense. Id. There is no such indication that this is the case. It should be noted that Estes at no time objected to the dismissal of the indictment. A defendant's failure to object to a motion for a continuance has been found to be the equivalent to acquiescence. Winder v. State, 640 So.2d 893, 894 (Miss.1994). We find no reason not to extend such acquiescence for failure to object to the dismissal of an indictment. Nevertheless, this factor weighs minimally against the State.
¶ 12. The third Barkerfactor requires that the defendant timely assert his right to a speedy trial. The record clearly shows that at no time from the date of his arrest on November 16, 1998 until September 9, 1999, just a week prior to his trial, did Estes assert his right to a speedy trial. Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant bears some responsibility to assert this right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991). Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Barker, 407 U.S. at 532. In the case at bar, this assertion was not shown. "A demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for a speedy trial. Such a motion seeks discharge, not trial." Perry v. State, 637 So.2d 871, 875 (Miss.1994). The defendant's assertion of this right is weighed heavily in determining whether he has been deprived of the right. Barker, 407 U.S. at 532. Thus this factor weighs heavily against Estes.
¶ 13. Prejudice, the last factor, is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: prevention of oppressive pre-trial incarceration, limitation of the possibility of impairment of defense, and minimization of anxiety and concern of the accused. Barker, 407 U.S. at 532. Estes argues that his defense was impaired because the testimony of two officers at the hearing on his motion to dismiss shows the prejudice because they testified that their memory was "fuzzy." To the contrary, we find that his reliance on this testimony serves to highlight the lack of any prejudice. What Estes fails to mention is that neither of these officers had any significant part in this case and that neither officer was called to testify at the trial. Estes also attempts to show prejudice in testifying to the anxiety he suffered while incarcerated and awaiting trial. While anxiety of the accused is a cause of concern, where there is no other prejudice asserted on the defendant's part, this factor has little weight in his favor. Hull v. State, 687 So.2d 708, 730 (Miss. 1996). Moreover, incarceration alone is not sufficient prejudice to warrant reversal. Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996).

BALANCING
¶ 14. It is now necessary to balance the four Barkerfactors. This Court weighs the initial presumption of prejudice regarding the delay in Estes's favor. The second factor, the reason for the delay, we weigh minimally against the State since the major portion of the delay was attributed to the fact that the first indictment *1252 was dismissed because a key witness recanted. The third factor weighs heavily against Estes since he did not assert his right to a speedy trial until just one week prior to his trial. Lastly, we find that Estes suffered little, if any, prejudice as the result of the delay.
¶ 15. Where the delay is not intentional or egregiously protracted, and there is a complete absence of prejudice, the balance is in favor of rejecting the speedy trial claim. Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). Though minimal prejudice may have resulted as a result of Estes's having been incarcerated prior to trial, after balancing the four factors, especially considering that Estes did not assert his right to a speedy trial in a timely manner, this Court finds that the initial presumption of prejudice has been overcome and that the trial court was correct in finding that there was no violation of Estes's right to a speedy trial.

III. DID THE COURT ERR IN OVERRULING ESTES'S OBJECTIONS TO THE STATE'S IMPEACHMENT OF TWO DEFENSE WITNESSES?
¶ 16. Estes claims that the trial court committed error in allowing the State to impeach defense witness Robert King by eliciting the fact that he had not come forward earlier with his testimony that exculpated the defendant. The issue is whether King, as a defense witness, can be cross-examined regarding his prior silence in reference to the exculpatory statement. The United States Supreme Court has held that such cross-examination is not permitted where the witness is a "Mirandized" defendant, Doyle v. Ohio, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), or where the witness's silence is attributed to his belief that he may be named as a defendant, Grunewald v. United States, 353 U.S. 391, 418-19, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (Jackson, J., concurring). In this state, cross-examination regarding prior silence has not been permitted where the witness's silence is pursuant to the assertion of spousal privilege. Hickson v. State, 697 So.2d 391, 398-99 (Miss.1997). The record indicates that none of these situations are applicable in the case sub judice.
¶ 17. We believe that Powell v. State, 662 So.2d 1095 (Miss.1995), is on point. In that case the prosecution questioned five defense witnesses regarding their failure to come forward to law enforcement officers with information pertaining to the shooting incident central to the case. The appellant in Powell asserted that the prosecution insinuated to the jury that the witnesses were perjuring themselves because they had not come forward earlier with the statement. Id. at 1099-1100.
¶ 18. Powellrelied on Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), in its evaluation of the issue. Jenkins stated that the common law traditionally allowed the impeachment of witnesses "by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." Id. at 239; 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev.1970). Jenkins construed such silence as being probative of truthfulness. It, however, left each jurisdiction the opportunity to "formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." Jenkins, 447 U.S. at 231. Though Powell-recognized that the Mississippi Rules of Evidence does not address the issue, the line of questioning was upheld in that case. Powell cited as its basis that the prosecution had conducted a fair cross-examination in its attempt to expose potential falsehoods. Powell, 662 So.2d at 1100.
*1253 ¶ 19. Estes relies on Hickson v. State, 697 So.2d 391 (Miss.1997), which, upon first impression, appears to be contrary to Powell. Hickson, however, does not overrule Powellbut distinguishes itself from it. Id. at 398 n. 7. Hickson, in concluding that that witness's silence regarding her exculpatory testimony was not properly elicited, hinged its reasoning on inadequate cross-examination regarding the silence, distinguishing Powellin that cross-examination there had been fair. Id. In addition, Hickson involved factors which complicated the issue and which are not applicable in the case sub judice. The major complicating factor in Hicksonwas that the witness eliciting the exculpatory testimony was the wife of the defendant for whom spousal immunity applied until it was waived the week before the trial when she was listed as a witness for the defense. Cross-examination of the witness did not elicit this information, as well as other information, which would have provided an explanation for her refusal to speak with counsel opposite and therefore the reason for the silence; the witness's silence was therefore not permitted for purposes of impeachment. Id. at 398-99. Another distinguishing fact in Hicksonis that the witness's silence was in regard to counsel opposite, rather than silence resulting from not having come forward to law enforcement with the exculpatory testimony, as it is in this case.
¶ 20. Thus both Powelland Hickson restrict impeachment of witnesses by silence to adequate cross-examination. A review of the record shows that King was properly cross-examined, having been given the opportunity to explain the reason for his silence and the circumstances regarding it. We therefore find no error in the State's having impeached King by eliciting the fact that he had not come forward earlier with the testimony that exculpated the defendant.
¶ 21. Estes also complains that the trial court was in error in impeaching defense witness Derrick Manning. We read the portion of the record cited by the appellant to show that the prosecutor was not impeaching Manning for his refusal to talk with the prosecutor, but for his telling him that he knew nothing about any statements of Demetrius and Felicia Tatum. The prior inconsistent statement is one of the most legitimate and valuable weapons in cross-examination, Puckett v. State, 737 So.2d 322, 346 (¶ 70) (Miss.1999), and is provided for in M.R.E. 613(a). We do not find that this was error.

IV. DID THE COURT ERR IN REMOVING ESTES FROM THE COURTROOM THEREBY DENYING HIM THE RIGHT TO BE PRESENT AND TAKE PART IN THE SELECTION OF JURORS?
¶ 22. We have reviewed the record which clearly indicates that Estes had been contentious during the entire trial but had become uncontrollable as jury selection began. The judge told Estes that his right to be present during the trial would be waived by his disruptions. Nevertheless, Estes continually interrupted the trial court judge, refusing to be quiet at his command, and was therefore ultimately removed from the courtroom just prior to jury selection. After the jury was selected, Estes was then brought back into the courtroom and informed that he had the right to be present as long as he was not disruptive of the proceedings and that disruptive behavior would waive the right. Estes contends that the trial court committed reversible error in ordering that he be removed from the courtroom during jury selection. Moreover, Estes claims that he may have raised a Batson challenge had he been present during jury selection. The *1254 record shows that his counsel left the courtroom to talk with him regarding the jury selection process, and Estes indicated to him that he would not cooperate.
¶ 23. Though one accused of a crime has the right to be present in the courtroom at every stage of his trial, that right is not absolute. Bostic v. State, 531 So.2d 1210, 1212-13 (Miss.1988). The trial judge warned Estes that he would be removed from the courtroom if his disruptive behavior continued, in accordance with Bostic. Id. We do not find that the court was in error in removing Estes from the courtroom under the circumstances. We do not delight in holding that Estes was properly banished from the court for a part of his own trial. However, it is essential to the proper administration of criminal justice that dignity and order be preserved at such proceedings. The overt disregard in the courtroom of elementary standards of proper conduct cannot be tolerated.
¶ 24. Bostic lists three constitutionally permissible ways for a trial judge to handle a disruptive criminal defendant: citing or threatening the defendant for criminal contempt, binding and gagging the defendant, thereby keeping him present; and taking him out of the courtroom until he promises to conduct himself properly. Bostic, 531 So.2d at 1213. Estes's constant disruptions were clearly of such an aggravated nature as to justify either his removal from the courtroom or his being gagged. Prior to his removal he was warned by the trial judge that he would be removed from the courtroom if he persisted in his conduct, and the record demonstrates that Estes would not have been at all dissuaded by the trial judge's use of his criminal contempt powers. Deplorable as it is that Estes was removed from his own trial, even for a short time, we hold that the judge did not commit legal error in so doing.

V. DID THE COURT ERR IN REFUSING TO GRANT PROPOSED JURY INSTRUCTION D-4?
¶ 25. Estes contends that the trial court erred in granting instruction S-1 (jury instruction 4) as opposed to D-4. The instructions are somewhat lengthy, and we will therefore not quote them but discuss only the relevant portions. The essence of his argument lies in the fact that the indictment charged Estes with possession of a Colt .38 and instruction S-1 failed to describe the firearm Estes was alleged to have had in his possession.
¶ 26. We first note that Estes failed to object to S-1 on that ground at trial, and he has therefore waived the issue for consideration on appeal. Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994).
Nevertheless, the listing in the indictment of the type of firearm possessed by Estes is not an element of the crime and would thus be superfluous as part of the jury instruction. Besides, the State showed through its witness, Demetrius Tatum, that the gun Tatum identified at the police station was the same one that Estes had shown him the day before and that Estes told him it was a .38. Under these circumstances, we find no error in the trial court's having granted jury instruction S-1.
¶ 27. Moreover, proposed instruction D-4 was properly refused because it did not correctly state the law. A trial court cannot be put in error for refusing an instruction that misstates the law. Willie v. State, 585 So.2d 660, 673 (Miss. 1991). The portion of instruction D-4 in error required the State, in order to find him guilty, to prove that Estes, a convicted felon, had not received a pardon for the felony, or had not received a certificate of *1255 rehabilitation pursuant to Miss.Code Ann. § 97-37-5(c) (Rev.1994). When a fact is peculiarly within the knowledge of one of the parties so that innocence can be proven with no difficulty, the law will not render it incumbent upon the other side to prove the innocence. Miller v. State, 105 Miss. 777, 779, 63 So. 269, 269 (1913). This is an affirmative defense which would have placed the burden on Estes to establish. Thus, it is not upon the State to prove a negative. Id.

VI. WAS THE TRIAL COURT IN ERR IN OVERRULING ESTES'S MOTION FOR A NEW TRIAL?
¶ 28. In asserting that the verdict was against the overwhelming weight of the evidence, Estes is actually arguing that the trial court erred in overruling his motion for a new trial. In determining whether a jury verdict is against the overwhelming weight of the evidence, thus meriting a new trial, our standard of review requires us to accept, as true, the evidence which supports the verdict, and we will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). It has been said that on a motion for new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 29. The State's case consisted of four witnesses. Two of the witnesses were siblings, Demetrius and Felicia Tatum, who testified that Estes was in their home on November 15, 1998 with a gun and a box of jewelry which he offered for sale. On November 16, when Estes came back to the Tatums, Felicia was on the telephone with her cousin and asked the cousin to call the police because Estes was there with a gun and she was afraid. Police immediately responded and Estes fled, throwing the gun in a wooded area behind the house. When law enforcement recovered the gun, both witnesses identified it as the one that Estes had. Law enforcement officers testified as to the facts regarding their response to the call and their recovery of the gun. One officer testified he saw Estes as he was fleeing and recognized him by his distinctive ponytail. The other officer testified he saw Estes coming out of the woods and arrested him. The State proved that Estes was a convicted felon. The case against Estes was bolstered by Estes's antics as Estes represented himself pro se once the witnesses took the stand. Estes demanded that Felicia's and Demetrius's statements to the police be introduced into evidence, over the advice of counsel, although they contained incriminating information which would otherwise have been inadmissible.
¶ 30. Estes's two chief defense witnesses made no claim to having been present at the Tatums when Estes was said to have been there offering the gun for sale. Estes's chief defense was the testimony of Robert King that he was on the telephone with Felicia Tatum while the police were at her house looking for Estes. King testified *1256 that Felicia told him that Estes had been at her house but that he did not have a gun with him. It is difficult to determine what purpose Derrick Manning's testimony served; however, it basically focused on discrediting Demetrius Tatum and the prosecutor.
¶ 31. Ultimately, the weight and credibility of the witnesses is for the jury to decide. Shamblin v. State, 601 So.2d 407, 412-13 (Miss.1992). The State presented witnesses with corroborating testimony of Estes having had possession of a firearm and evidence that he was a convicted felon. The witnesses identified Estes and the gun. While it is true that Estes's own testimony conflicted with that of the state's witnesses, such conflicts were properly left for the jury to resolve. Accordingly, we submit that the jury's verdict is not against the overwhelming weight of the evidence, and that no injustice against Estes resulted when the trial court allowed the verdict to stand.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY FOR CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON, HABITUAL OFFENDER, AND SENTENCE TO A TERM OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY A FINE IN THE AMOUNT OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.