## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2017-KA-01509-COA

**VADELL JOHNSON A/K/A VADELL C. JOHNSON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

DATE OF JUDGMENT:            05/15/2017
TRIAL JUDGE:                 HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:   BOLIVAR COUNTY CIRCUIT COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      AZKI SHAH
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: LISA L. BLOUNT
DISTRICT ATTORNEY:           BRENDA FAY MITCHELL
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 05/14/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Vadell Johnson was convicted of murder, aggravated assault, and possession of a firearm by a felon after a jury trial in the Circuit Court of the Second Judicial District of Bolivar County. Johnson was sentenced to life for his murder conviction, ten years for his aggravated-assault conviction, and one year for his felon-in-possession conviction to be served in the custody of the Mississippi Department of Corrections.

¶2.     Following the denial of his motion for judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial, Johnson appealed. Johnson asserts that the trial

court erred by denying his post-trial motion because the jury's verdicts were not supported by sufficient evidence and were against the overwhelming weight of the evidence. He also asserts that he was denied a fair trial because several jurors failed to disclose that they knew the victim(s). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Around 1:00 a.m. on July 1, 2010, a shooting occurred at Fermier's Club in Cleveland, Mississippi. Vadell Johnson was later arrested and charged with the murder of Scottie Tutwiler Jr., the aggravated assault of Damien Story, the aggravated assault of Demonte Cox, and the possession of a firearm by a felon.

¶4. At Johnson's trial, Corvet Robinson testified that she saw Johnson at the club that night. According to Robinson, Johnson was her cousin, and he asked her to introduce him to the rest of her "kinfolk in case some s[***] kick off . . . in the club." Robinson did not know what Johnson meant, but she introduced him to a few people and then went to get a drink from the bar. As Robinson was walking to the bar, she heard gunshots. But Robinson did not know if Johnson was the shooter. After the shooting, Robinson saw Tutwiler outside. Tutwiler had been shot while he was inside the club, which ultimately caused his death.

¶5. Story was also shot that evening. Story testified that when he arrived at the club, he spoke with Tutwiler and Cox. Then Robinson introduced him to Johnson, but Story "really [didn't] pay. . . him no mind." He and Johnson spoke "for a minute or so," and then Story walked away. Story testified that after he finished speaking with Johnson, he was shot in the arm. When Story turned around to see who shot him, he saw Johnson with a gun in his hand.

2

According to Story, everyone started running after the gunshot, which caused him to fall. And then Johnson stood over him and shot him again.

¶6. Story admitted that he could not identify the shooter while he was in the hospital. But he explained that he was on Morphine and was in a lot of pain at the time. Story testified that he was shown a photo lineup several days later, and he identified Johnson as the shooter. At trial, Story also identified Johnson as the shooter. Although Story did not see Tutwiler get shot, he testified that Johnson was the only person he saw with a gun, and he did not hear any other guns.

¶7. Chief Investigator George Serio with the Cleveland Police Department testified that, during the investigation, a witness told him that the shooter had gold teeth. But he could not recall if Johnson had gold teeth when he was arrested several days after the shooting. Yet Story testified that Johnson had a "snatch out," or removable, grill.

¶8. After the State rested its case in chief, the defense moved for a directed verdict. The trial judge denied the motion as to Counts I, II, and IV, but granted the motion as to Count III—the aggravated assault of Cox.

¶9. Shawn Palmer, a security guard at Fermier's, testified for the defense. Like Story, Palmer testified that he only heard one gun that night. Law enforcement presented Palmer with a photo lineup after the shooting. Although Palmer was not able to identify the shooter, he was able to identify an individual ("Fitz") whom he saw in the area from which the shots were fired.[1] Palmer testified that Fitz had "snatch out gold teeth." But he was not sure if

---

[1] Johnson's photograph was not included in the lineup.

3

anyone else had gold teeth.

¶10.  After the defense rested, Johnson renewed his motion for a directed verdict.  The trial court denied the motion, and Johnson was convicted of murder, aggravated assault, and possession of a firearm by a felon.  The jury unanimously agreed to sentence Johnson to life for his murder conviction.  Then the trial judge sentenced Johnson to ten years for his aggravated-assault conviction and one year for his felon-in-possession conviction.

¶11.  On May 11, 2017, Johnson filed a motion for judgment of acquittal notwithstanding the verdict (JNOV) or, in the alternative, a new trial.  The trial court denied Johnson's motion the same day, and on May 15, 2017, the court entered its final judgment.  On June 5, 2017, Johnson filed an amended motion for a JNOV or, in the alternative, a new trial, claiming that he was denied a fair trial because several jurors failed to disclose that they knew the victim(s).  On October 3, 2017, Johnson filed a motion requesting that the trial court hold a hearing on his previous motion.  Before the court ruled on either of Johnson's motions, on October 27, 2017, Johnson filed a notice of appeal.  Subsequently, on December 8, 2017, the trial court entered an order denying the motion for a hearing.

¶12.  After filing his notice of appeal, on April 10, 2018, Johnson filed a motion requesting that this Court allow the trial court to conduct an evidentiary hearing on his claim of juror bias and prejudice.  In response, the State filed a motion to dismiss Johnson's appeal as time barred and a motion to strike Johnson's motion requesting an evidentiary hearing.  On September 4, 2018, this Court entered an order allowing Johnson's appeal to proceed.  Johnson's motion for an evidentiary hearing was denied without prejudice.  On November

25, 2018, Johnson filed another motion for an evidentiary hearing, which this Court denied.

¶13.    We now turn to the merits of Johnson's claims.

**DISCUSSION**

**I.    SUFFICIENCY OF THE EVIDENCE**

¶14.    When we address a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Smith v. State*, 250 So. 3d 421, 424 (¶12) (Miss. 2018). "All credible evidence consistent with the defendant's guilt will be accepted as true, as well as all favorable inferences that may be reasonably drawn from the evidence." *Gillespie v. State*, 196 So. 3d 1073, 1074-75 (¶7) (Miss. Ct. App. 2016) (citing *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006)).

**A.    Aggravated Assault**

¶15.    In order to obtain a conviction for aggravated assault, the State had to prove beyond a reasonable doubt that Johnson purposely, knowingly, or recklessly caused, under circumstances manifesting extreme indifference to the value of human life, serious bodily injury to Story. *See* Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2006).

¶16.    Story testified that, as he was walking through the club, Robinson introduced him to her cousin—Johnson. Story testified he "really [didn't] pay. . . him no mind." He and Johnson spoke "for a minute or so" and then walked away. Story testified that shortly after speaking with Johnson, he was shot in the arm. When Story turned around, he saw Johnson

5

with a gun in his hand. According to Story, people started running after the gunshot, which caused him to fall. And then Johnson stood over him and shot him again.

¶17. We find that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of aggravated assault beyond a reasonable doubt.

### B. Murder

¶18. In order to obtain a conviction for murder, the State had to prove beyond a reasonable doubt that Johnson killed Tutwiler while in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual. *See* Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2006).

¶19. At trial, Robinson testified that Johnson asked her to introduce her to people in case some "s[***] kick off in the club." And as discussed, Story testified that he saw Johnson holding a gun after he was shot the first time. Then he saw Johnson shoot him the second time. Story also testified that he did not see anyone else with a gun that night, and that he only heard one gun. Similarly, Palmer testified that he only heard one gun. Based on this testimony, a jury could infer that Johnson also shot Tutwiler. Further, Dr. Feng Li testified that the cause of Tutwiler's death was a gunshot wound. Johnson takes issue with the fact that a gun was never recovered. But this is not required for a conviction. *See Graham v. State*, 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002).

¶20. We find that after viewing the evidence in the light most favorable to the prosecution,

6

any rational trier of fact could have found the essential elements of the crime of murder beyond a reasonable doubt.

### C.    Possession by Felon

¶21.    In order to obtain a conviction for possession of a firearm by a felon, the State had to prove beyond a reasonable doubt that Johnson possessed a firearm after he had previously been convicted of a felony. *See* Miss. Code Ann. § 97-37-5 (Rev. 2006). Story testified that he saw a gun in Johnson's hand on July 1, 2010. And Johnson stipulated that he had a prior felony conviction. We find that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of this crime beyond a reasonable doubt.

## II.    WEIGHT OF THE EVIDENCE

¶22.    A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence. *Fontaine v. State*, 256 So. 3d 615, 627 (¶42) (Miss. Ct. App. 2018) (quoting *Thomas v. State*, 48 So. 3d 460, 469 (¶20) (Miss. 2010)). When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we consider the evidence "in the light most favorable to the verdict," only disturbing a verdict when it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). "We do not make independent resolutions of conflicting evidence." *Id.* at (¶20). "Nor do we reweigh the evidence or make witness-credibility determinations." *Id.* "Instead, 'when the evidence is conflicting, the jury will be the sole

judge of the credibility of witnesses and the weight and worth of their testimony.'" *Id.*

¶23. Johnson takes issue with the fact that Story had not met him before July 1, 2010, yet Story identified him as the shooter. But Story testified that he was introduced to Johnson the night of the shooting. And he had just finished speaking with Johnson when he was shot in the arm. Johnson also takes issue with the fact that Story could not identify the shooter while he was in the hospital but then identified him as the shooter several days later. As stated, the jury is responsible for determining the credibility of witnesses. Story testified, and the jury obviously believed, that he was unable to identify the shooter while he was in the hospital because he was on Morphine and in a lot of pain.

¶24. Finally, Johnson takes issue with the fact that a witness identified the shooter as having gold teeth, but Investigator Serio could not recall if Johnson had gold teeth several days after the shooting occurred. However, Story explained that Johnson's grill was *removable*. As stated, the jury is responsible for resolving any conflicts in the evidence. The jury listened to all of the testimony presented at trial and resolved any conflict in the evidence in favor of the State.

¶25. Considering the evidence in the light most favorable to the verdicts, we cannot find that the jury's verdicts were contrary to the overwhelming weight of the evidence or that allowing them to stand would sanction an unconscionable injustice.

### III.    JUROR BIAS AND PREJUDICE

¶26. Finally, Johnson claims that information was developed after his trial that several jurors either knew Tutwiler or had a very close relationship with his family. Because of this,

Johnson claims he did not receive a fair trial. Johnson raised this issue for the first time in his "amended" post-trial motion on which there was never a hearing in the circuit court.

¶27. Johnson filed his first post-trial motion on May 11, 2017. The circuit court denied the motion the same day and entered its final judgment on May 15, 2017. Johnson then filed the amended post-trial motion on June 5, 2017, and on October 3, 2017, he filed a motion requesting a hearing. Before the circuit court ruled on the amended motion or the motion for a hearing, Johnson filed his notice of appeal on October 27, 2017. This Court has held that "'the filing of [a] notice of appeal perfect[s] the appeal and divest[s] the lower court of jurisdiction.'" *See Estes v. State*, 782 So. 2d 1244, 1248 (¶2) (Miss. Ct. App. 2000); *see also Fox v. State*, 151 So. 3d 226, 232 (¶19) (Miss. Ct. App. 2014).[2] Accordingly, the circuit court lacked jurisdiction to consider the claims in Johnson's amended motion. Because the circuit court did not consider the merits of the amended motion, there is no record before us to review.

¶28. We cannot consider the merits of Johnson's amended motion, as we do not consider what is not in the record. *See Ivy v. State*, 103 So. 3d 766, 770 (¶13) (Miss. Ct. App. 2012) ("This Court 'will not consider matters which are outside the record and must confine ourselves to what actually does appear in the record.'"). There is nothing in the record to

---

[2] Estes filed a motion for a new trial, which the trial court overruled on September 27, 1999. *Estes*, 782 So. 2d at 1248 (¶2). After Estes retained new counsel, he filed a motion for leave to file an amended motion for a new trial, asserting, among other things, that he had received ineffective assistance of counsel. *Id*. This Court held, "Because a notice of appeal was also filed on that same date, the subsequent hearing on the amended motion for a new trial, as well as the lower court's ruling on the motion, was null." *Id*. "In essence, the filing of the notice of appeal perfected the appeal and divested the lower court of jurisdiction." *Id*.

9

support Johnson's claim of juror bias, which was developed post trial. Such a claim is usually the topic of a motion for post-conviction collateral relief.

## CONCLUSION

¶29. We find that the evidence was sufficient to support the jury's verdicts, and the verdicts were not against the overwhelming weight of the evidence. Accordingly, we affirm Johnson's convictions and sentences.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**