BARNES, J.,
for the Court:
¶ 1. Anita Carol Pearson was convicted by a Pearl River County Circuit Court jury of conspiring to intimidate a witness. She appeals her conviction and sentence, claiming that the circuit court erred in the admission of certain evidence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. Pearson operated a bail bonding company called “A1 Outlaw Bonding.” One of her regular clients was Jimmy Dale Frierson, who had known Pearson for approximately twenty years. On February 17, 2009, Frierson was in justice court for violating parole, and he spotted Pearson trying to get his attention. Frierson claimed Pearson made a hand gesture (drawing her hand across her throat) that indicated to him she wanted Frierson to harm another defendant present in the courtroom. That defendant was Mark Harris, another client of Pearson’s. Harris had filed a complaint against Pearson in 2008 for kidnapping and armed robbery. The basis of the complaint was that one of Pearson’s investigators apprehended Harris for violating the conditions of his bond and, in the process, assaulted him and took money from him. For this charge, Pearson had been arrested on February 6, 2009, and was out on bond herself.
¶ 3. After Frierson told law enforcement about Pearson’s hand gesture, he submitted a statement to the local circuit court judge on February 20, 2009, saying he believed Pearson wanted him to kill or hurt Harris in exchange for money. Fri-erson agreed to act as a confidential informant to obtain further information, and law enforcement taped three phone conversations between Frierson and Pearson that occurred between February 23rd and February 26th. In the first taped conversation, Pearson talked to Frierson about obtaining bond for another inmate, and she then brought up the following:
P: So, um, the other lil’ matter?
F: Yeah, with Mark [Harris]? I’m get-tin’ him.
P: Yeah.
F: He’s fixing to get moved down here to me.
P: Okay.
F: I’m havin’ him moved in the cell with me. I’m fixin’ to take care of his ass for ya.
P: That’ll work. Okay.... [The rest of the conversation was related to other bonding matter].
¶ 4. In the second phone call, Frierson told Pearson he had someone ready to “take care” of Harris, but Pearson told Frierson to talk to Harris first and that her attorney, Glenn White, was going to “pull [Harris] out tomorrow night.”
F: Alright. On Mark [Harris], you want me to wait till he talks to Glenn White?
P: Yeah.
F: Or what?
P: Yeah, yeah, yeah.
(Inaudible — talking over each other)
F: And then get him?
*151 P: Yeah.
F: Alright you want me to get him?
P: Yeah, but you wait. You wait until he talks to him, then you call me back and I’m gonna tell you what he said.
In the last conversation, the two discussed the fact that Harris had been taken from jail, and Frierson asked Pearson: ‘You want me to take care of this son of a bitch?” Pearson replied: “A, yes, mmhum.” Pearson then told Frierson that she had a one-hundred dollar bill for him and to send someone to pick up money that he could use for the prison canteen.[1] Law enforcement sent an undercover employee to pick up the money from Pearson.
¶ 5. On June 12, 2009, Pearson was indicted for conspiring to intimidate a witness by paying Frierson one-hundred dollars “to threaten and/or assault Mark Harris” in order to influence his testimony.[2] The State presented testimony by Frierson and submitted the taped phone conversations as evidence. The defense argued that Pearson was being framed by law enforcement, and one of its witnesses, Sandra Tevo, claimed that Frierson, who was her uncle, confessed to her that Pearson did not do what he had accused her of doing. In rebuttal, the State called Investigator Larry Ware with the Attorney General’s office to testify regarding a taped conversation between himself and Tevo, where she admitted that Pearson had helped her get out of jail on bond in exchange for spying on Frierson. Over the defense’s objection, the circuit judge allowed Investigator Ware’s testimony and allowed the recording to be played for the jury, finding that it was admissible as a prior inconsistent statement by a witness in order to impeach Tevo’s testimony.[3]
¶ 6. After a four-day trial, Pearson was convicted on June 16, 2011, and sentenced to five years in the custody of the Mississippi Department of Corrections, with the first year to be served in the Intensive Supervision Program (ISP) (“house arrest”) and, upon successful completion of the ISP, the second year to be served under post-release supervision, with the remainder of the sentence to be suspended if Pearson abides by the terms and conditions of post-release supervision.
¶ 7. Pearson filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The circuit court denied the motion. On appeal, Pearson alleges that the circuit judge erred in ruling that the taped conversation between Tevo and Investigator Ware was admissible rebuttal evidence. Finding no error, we affirm.
ANALYSIS
I. Whether the circuit court erred in admitting testimony in violation of Uniform Rules of Circuit and County Court Practice 9.04.
¶ 8. At trial, Tevo testified for the defense, stating that her uncle, Frierson, was “not a truthful person.” She claimed Frierson had told her that Pearson “didn’t do this” and that the police approached him to set up Pearson and promised he “could be released from jail” if he helped them.[4] Tevo did acknowledge that she *152 was currently out on bond through Pearson’s bonding company and that Pearson was a friend. While she admitted on cross-examination that she had talked with Investigator Ware, Tevo denied that they had talked about her helping Pearson in exchange for Pearson getting her out of jail on bond.
¶ 9. In rebuttal, the State played a recorded conversation between Tevo and Investigator Ware. Defense counsel objected to the recorded statement, but the State argued that it was rebuttal evidence to Tevo’s testimony and a prior inconsistent statement. The judge ruled that “if [Tevo] is testifying to what [Pearson] told her, and it is inconsistent with her other statement, then it is admissible.” In the recording, Tevo told Investigator Ware that Pearson had used her to spy on Frierson and set him up. Specifically, Tevo claimed that she and Pearson discussed planting narcotics on Frierson so that he would have trouble with law enforcement. Tevo also told Investigator Ware that Pearson had paid other inmates to state that Frier-son was a liar and admitted that Pearson did not make her pay any money for her $60,000 bond. After the jury left to deliberate, defense counsel again objected to the recording and made a motion to strike, requesting a mistrial. The circuit court denied the motion.
¶ 10. Pearson argues that allowing the tape recording into evidence violated Rule 9.04 of the Uniform Circuit and County Court Rules and that the only remedy was a mistrial. In her pretrial motion for discovery, Pearson requested that the State provide “all tape recordings and transcripts thereof containing any and all statements made by the Defendantf.]” The motion also requested “[a]ll statements made by the Defendant to third parties, including government and/or state agents whose identities were then unknown to Defendant.” Pearson claims the defense was “unfairly surprised as a result of the State’s failure to provide the recording prior to trial.”
¶ 11. “Rule 9.04(A)(1) of the Uniform Circuit and County Court Rules requires the State, upon written request, to disclose the identity of its witnesses in chief and the substance of their written or oral statements.” Ben v. State, 95 So.3d 1236, 1248 (¶ 35) (Miss.2012). However, as the State noted at trial, Tevo was the defense’s witness, not the State’s witness, and the recording was submitted during rebuttal. Therefore, Pearson is not entitled to relief under Rule 9.04(A)(1). See Yates v. State, 919 So.2d 1122, 1129 (¶ 31) (Miss.Ct.App.2005) (finding prosecution’s failure to disclose statement by a witness during rebuttal did not violate Rule 9.04(A)(1)).
¶ 12. Furthermore, since Pearson’s pretrial motion only requested “any and all statements” made by Pearson, we find that the State had no obligation to disclose Tevo’s prior inconsistent statement to opposing counsel under Rule 9.04. See Johnson v. State, 89 So.3d 630, 639 (¶ 29) (Miss.Ct.App.2011) (“[P]rior inconsistent statements used to impeach a witness need not be disclosed to opposing counsel unless opposing counsel has requested that such statements be disclosed.” (quoting Ross v. State, 954 So.2d 968, 999 (¶ 63) (Miss.2007))). Accordingly, we find no merit to this assignment of error.
II. Whether the circuit court erred in allowing rebuttal testimony of prior bad acts.
¶ 13. Pearson also contends that the State’s rebuttal evidence violated Mississippi Rule of Evidence 608(b), which states:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’s character for *153 truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness’s character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
However, as the State accurately asserts in its brief, Pearson did not object to the rebuttal testimony on this specific ground. Rather, defense counsel argued that the evidence was “improper” as it violated Rule 9.04 (an issue we have already addressed above), and it was evidence of “what allegedly other people said” to Tevo, i.e., hearsay.[5] “Objections to evidence must bring to the attention of the [circuit] judge the specific ground on which it is contended such evidence is inadmissible so that the [circuit] judge may determine whether or not such evidence is available to objector’s adversary.” Lenard v. State, 77 So.3d 530, 535 (¶ 17) (Miss.Ct.App.2011) (quoting Stringer v. State, 279 So.2d 156, 158 (Miss.1973)). “[A]n objection on one or more specific grounds constitutes a waiver of all other grounds.” Brown v. State, 682 So.2d 340, 350 (Miss.1996). Consequently, this argument is waived on appeal.
¶ 14. Regardless, the Mississippi Supreme Court has held:
[The Rule 608(b) ] absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness’s character for truthfulness. The admissibility of extrinsic evidence offered for other grounds of impeachment, such as contradiction, prior inconsistent statement, bias, and mental or sensory capacity, is governed by Rules 402, 403, and 616.
Gore v. State, 37 So.3d 1178, 1188 (¶ 23) (Miss.2010) (emphasis added) (citing M.R.E. 608(b) cmt.). “[I]f a witness testifies either on direct or cross-examination[,] ‘the adverse party for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness himself, or by proving them by other witnesses.’ ” Hubbard v. State, 437 So.2d 430, 434-35 (Miss.1983) (emphasis added and citation omitted). As the State points out, the purpose of introducing this rebuttal testimony was to contradict Tevo’s prior testimony, not to attack Tevo’s character for truthfulness. During cross-examination by the State, Tevo admitted that she had spoken with Investigator Ware, but denied the investigator asked her “about that conversation with [Pearson] about you trying to get [Frier-son] to change his story in exchange for [Tevo] getting out of jail[.]” However, the recording shows that Tevo talked with the investigator for thirty minutes, during which time Tevo claimed Pearson wanted to be informed regarding Frierson’s activities. She said the two women discussed planting drugs on Frierson. Investigator Ware also testified: “Ms. Tevo stated that Ms. Pearson wanted her to follow Jimmy Dale Frierson around, keep her up abreast on his whereabouts, what he’s doing, that kind of stuff. Ms. Tevo also related that Ms. Pearson mentioned to her about planting drugs on Jimmy Dale Frierson.”
*154 ¶ 15. The State explained at trial that the reason the recording was only entered for identification purposes was that it was “not intended to be substantial evidence.” The State continued: “It’s for impeachment purposes only. And that’s what the rule provides. It does not go in as to substance. It’s for impeachment purposes.” Based on our review, we agree with the circuit court’s finding that the rebuttal testimony was admissible as a pri- or inconsistent statement.
¶ 16. Furthermore, although not raised by the parties, we find that the rebuttal testimony was proper to show bias by the witness, Tevo. Mississippi Rule of Evidence 616 states that “evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible” for the purpose of attacking a witness’s credibility.
It is a permissible means of impeaching a witness to attempt to show that the witness is, for some reason, biased or prejudiced for or against a party. Indeed, evidence of bias is admissible for attacking witness credibility, and our supreme court has instructed that bias is always material and may be proven by extrinsic evidence.
Banks v. State, 45 So.3d 676, 681 (¶ 23) (Miss.Ct.App.2010) (internal citations omitted).[6] At trial and in the recording, Tevo acknowledged that she and Pearson were friends. In the recording, Tevo stated that she was worried that when Pearson found out Tevo “went against her,” Pearson would revoke her bond. Investigator Ware also testified: “Ms. Tevo seem[ed] to be concerned about her bonding being revoked by Ms. Pearson’s company and also a gentlemen by the name of Gerald Burge, which she stated that Mr. Burge had killed someone in her family.”[7]
¶ 17. “The determination of whether evidence is properly admitted as rebuttal evidence is within the [circuit] court’s discretion.” Terrell v. State, 969 So.2d 53, 55 (¶ 7) (Miss.Ct.App.2007) (citing Powell v. State, 662 So.2d 1095, 1099 (Miss.1995)). We find that the circuit court did not abuse its discretion by admitting Investigator Ware’s testimony and allowing the jury to hear the taped recording as rebuttal to impeach Tevo’s prior testimony. The testimony was admissible as a prior inconsistent statement; it was also admissible to show bias by the witness. Accordingly, we affirm the circuit court’s judgment.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OF CONVICTION OF CONSPIRACY TO INTIMIDATE A WITNESS AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS TO SERVE, WITH THE FIRST YEAR TO BE SERVED ON HOUSE ARREST AND, UPON SUCCESSFUL COMPLETION OF ONE YEAR OF HOUSE ARREST, THE SECOND YEAR TO BE SERVED ON POST-RELEASE SUPERVISION, AND THE REMAINING THREE YEARS TO BE SUSPENDED UPON MEETING THE TERMS AND CONDITIONS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*155 LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The recordings of the three conversations were later submitted as evidence at trial. This version of the recording is from the defendant's Exhibit D-7, that Pearson claimed was a more accurate transcript of the recording than the State’s Exhibit S-2.

. See Miss.Code Ann. § 97-9-113 (Rev.2006).

. The recording was not introduced as evidence; it was merely marked for identification purposes.

. Pearson’s main theory of defense was that the local police did not like her due to her bonding practices and that they were trying to set her up.

. Defense counsel did not use the term "hearsay” in its objection to the rebuttal evidence, and Pearson does not argue on appeal that the evidence was inadmissible as hearsay.

. The Banks court continued: “Furthermore, ‘if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay.' " Banks, 45 So.3d at 681 (¶ 23) (quoting M.R.E. 801(c) cmt.).

. Burge is Pearson’s ex-husband.